**BOUTIN JONES INC.**
Robert D. Swanson (CA Bar No. 162816)
Daniel S. Stouder (CA Bar No. 226753)
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
T: (916) 321-4444/F: (916) 441-7597
Email: rswanson@boutinjones.com
dstouder@boutinjones.com

**RYAN WHALEY PLLC**
Evan W. Talley (*Pro Hac Vice*)
400 North Walnut Avenue
Oklahoma City, OK 73104
T: (405) 239-6040
Email: etalley@ryanwhaley.com

**DUNLAP CODDING PC**
Douglas J. Sorocco (*Pro Hac Vice*)
609 West Sheridan Avenue
Oklahoma City, OK 73102
T: (405) 607-8600/F: (405) 607-8686
Email: dsorocco@dunlapcodding.com

***Attorneys for Plaintiff***
***Guardian Alliance Technologies, Inc.***

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation;

Plaintiff,

vs.

MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual;

Defendants.

**Case No. 2:22-CV-01390-WBS-AC**

**PLAINTIFF GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S OPENING CLAIM CONSTRUCTION BRIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. William B. Shubb
Courtroom 5, 14th Floor
501 I Street
Sacramento, CA 95814

Complaint filed: August 5, 2022

# TABLE OF CONTENTS


I. INTRODUCTION & BACKGROUND ..... 1
II. FACTUAL BACKGROUND ..... 3
A. OVERVIEW OF THE ’098 AND ’188 PATENTS ..... 3
III. ARGUMENT AND AUTHORITIES ..... 4
A. LEGAL STANDARD FOR CLAIM CONSTRUCTION ..... 4
B. THE COURT SHOULD DISREGARD MR. HOWELL’S DECLARATION ..... 7
C. THE LEVEL OF ORDINARY SKILL IN THE ART ..... 11
D. CLAIM TERMS ..... 11
“applicant entry” ..... 12
“new applicant entry” ..... 14
“previous applicant entry” ..... 14
“electronic documents” ..... 15
“applicant set of electronic documents” ..... 16
“reference set of electronic documents” ..... 17
“first reference set of electronic documents” ..... 17
“hyperlink” ..... 18
“applicant hyperlink” ..... 21
“reference hyperlink” ..... 21
“first reference hyperlink” ..... 22
“program data” ..... 22
“first set of program data” ..... 23
“second set of program data” ..... 24
“reference set of program data” ..... 24
“questionnaire” ..... 25
“inter-active questionnaire” ..... 26
“classes of questionnaires” ..... 27
“reference” / “first reference” / “reference source” ..... 28
“reference class” / “type of reference” / “type of reference source” ..... 28
“determining a reference class” ..... 29
“suggested reference list” ..... 30

"generating a suggested reference list" .......... 32
CONCLUSION .......... 33

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alltech, Inc. v. Cenzone Tech, Inc.*,
No. 06 CV 0153 JM (RBB), 2007 WL 5793393 (S.D. Cal. Jan. 4, 2007) .......... 15, 21

*Asetek Danmark A/S v. CoolIT Sys. Inc.*,
No. 19-CV-00410-EMC, 2022 WL 21306656 (N.D. Cal. Oct. 25, 2022) .......... 6

*Aventis Pharm. Inc. v. Amino Chems. Ltd.*,
715 F.3d 1363 (Fed. Cir. 2013) .......... 5

*Baxter Int'l, Inc. v. CareFusion Corp.*
2019 WL 1897063 (N.D. Ill. Apr. 29, 2019) .......... 22

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
132 F.3d 701 (Fed. Cir. 1997) .......... 8, 11

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) .......... 7

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004) .......... 14, 26

*Custom Accessories, Inc. v. Jeffrey-Allan Indus.*,
807 F.2d 955 (Fed. Cir. 1986) .......... 11

*DMF, INC. v. AMP Plus, Inc*,
No. 2:18-CV-07090-CAS-GJS, 2019 WL 13548313 (C.D. Cal. Aug. 2, 2019) .......... 26

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .......... 12

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*,
301 F. Supp. 2d 970 (S.D. Iowa) .......... 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .......... 6

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .......... 5

*Massachusetts Inst. of Tech. v. Shire Pharms., Inc.*,
839 F.3d 1111 (Fed. Cir. 2016) .......... 5

*Merck & Co. v. Teva Pharm. USA, Inc.*,
395 F.3d 1364 (Fed.Cir.2005)....................13, 16, 30

*Microbes, Inc. v. Espoma Co.*,
No. 2:09-CV-237-CE, 2011 WL 1375608 (E.D. Tex. Apr. 12, 2011)....................16

*Miller Mendel, Inc. v. City of Anna, Texas*,
598 F. Supp. 3d 486 (E.D. Tex. 2022)....................1, 31

*Miller Mendel, Inc. v. City of Anna, Texas*,
No. 2:21-CV-00445-JRG, 2022 WL 2700334 (E.D. Tex. June 9, 2022)....................1, 2

*Miller Mendel, Inc. v. City of Anna, Texas,*
107 F.4th 1345 (Fed. Cir. 2024) ....................Passim

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................5

*Performance Designed Prods. LLC v. Okyn Holdings, Inc.*,
No. 25-CV-01360-RBM-JLB, 2026 WL 1133743 (S.D. Cal. Apr. 27, 2026)....................5, 18, 31

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................Passim

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004)....................6, 12, 30

*simplehuman, LLC v. iTouchless Housewares and Products, Inc.*,
506 F.Supp.3d 830 (N.D. Cal. 2020)....................6, 10

*Star Envirotech, Inc. v. Redline Detection, LLC*,
No. SACV1201861JGBDFMX, 2015 WL 12743875 (C.D. Cal. Apr. 30, 2015)....................Passim

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)....................Passim

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................6

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)....................5

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
326 F.Supp.2d 1060 (C.D. Cal. 2003)....................15, 16

*Vineyard Investigations v. E. & J. Gallo Winery*,
No. 1:19-CV-01482-JLT-SKO, 2024 WL 2022549 (E.D. Cal. May 7, 2024)....................6

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ........ 7

*Zelinski v. Brunswick Corp.*,
185 F.3d 1311 (Fed. Cir. 1999) ........ 7

**Statutes**

35 U.S.C. § 101 ........ 1, 10, 11

Plaintiff Guardian Alliance Technologies, Inc. ("GAT"), pursuant to the Stipulation and Order dated July 8, 2026 (Dkt. 101), submits the following opening claim construction brief in support of its position that the claim terms within claims 2–4 and 6–14 of U.S. Patent No. 10,043,188 and all of the claims, 1–14, of its parent patent, U.S. Patent No. 9,070,098 (collectively, the "Remaining Claims"), do not require construction and should be given their plain and ordinary meaning.[1]

## I. INTRODUCTION & BACKGROUND

Claim construction in this case arises with a unique background: three of the seven independent claims—1, 5, and 15 of the '188 Patent ("Invalidated Claims")—present in the two Patents-in-Suit have already been invalidated under 35 U.S.C. § 101 without any of the language of those claims receiving a formal construction. *See Miller Mendel, Inc. v. City of Anna, Texas*, 598 F. Supp. 3d 486 (E.D. Tex. 2022) ("Texas Invalidity Order"). The Federal Circuit affirmed that invalidation in a published opinion. *See Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 593, 220 L. Ed. 2d 231 (2024) ("Federal Circuit Opinion"). Both courts focused on the <u>ordinary claim language</u> and the Patents-in-Suit's description of the invention as "turn[ing] much of a common pre-employment background investigation electronic." *Texas Invalidity Order*, 598 F. Supp. 3d 486, 499; *Federal Circuit Opinion*, 107 F.4th 1345, 1352–54. Denying reconsideration, the Texas court reinforced the point: it "did not rely on evidence outside of the '188 Patent" because "the language intrinsic to the '188 Patent itself demands such a conclusion." *Miller Mendel, Inc. v. City of Anna, Texas*, No. 2:21-

[1] U.S. Patent Nos. 10,043,188 ("the '188 Patent") and 9,070,098 ("the '098 Patent") are attached hereto as Exhibits 1 and 2.

CV-00445-JRG, 2022 WL 2700334, at *5 (E.D. Tex. June 9, 2022), *aff'd*, 107 F.4th 1345 (Fed. Cir. 2024). Now, with the exception of terms related to "questionnaires," MMI asks this Court to provide constructions for the same claim language found in the extremely similar Invalidated Claims as it exists in the Remaining Claims.

The Remaining Claims add only minimal variations on the already-invalidated background-investigation process: checking for prior applicant entries, giving an investigator an option to modify electronic documents, using questionnaires where some questions may depend on prior answers, grouping questionnaires by reference type, and permitting investigators to edit questionnaires. None of those limitations turns on specialized terminology, and none requires a departure from the ordinary meaning of the claim language, particularly in consideration of the law of the case.

In fact, both parties come to this Court with different proposed constructions than provided to the court in the Oklahoma Action. *See Miller Mendel, Inc. et al., v. City of Oklahoma City, et al.*, U.S. District Court for the Western District of Oklahoma, Case No. 5:18-cv-00990-JD, Dkt. 117 & 119 ("Oklahoma Action"). However, the reasons for each party's change of heart are materially different. GAT's present position reflects the intervening rulings of the Eastern District of Texas and the Federal Circuit because those decisions confirm that the disputed language is ordinary, functional, and understandable in context—making formal construction unnecessary. By contrast, MMI's reversed stance appears to be an effort to manufacture claim-construction disputes after the same or materially overlapping claim language was held patent-ineligible without construction. Notably, MMI now seeks constructions for terms it previously said needed no construction and embraces the same kinds of paraphrases, examples, and limitations it previously criticized. But, MMI identifies no new intrinsic evidence, no change in claim language, and no

intervening authority justifying that reversal. The apparent change is not claim-driven; it is litigation-driven.

Regardless, the disputed terms should not be construed because the legal prerequisites for doing so are not present in this case: (1) the claims themselves provide any necessary context; (2) the Patents-in-Suit do not contain actual lexicography; (3) the Patents-in-Suit do not contain any explicit disclaimers; and (4) there is no genuine ambiguity requiring judicial rewriting. The words MMI has selected (e.g., "applicant entry," "electronic documents," "hyperlink," "program data," "questionnaire," "reference source," and "suggested reference list") are ordinary words used in an ordinary way throughout the claims and specifications of the Patents-in-Suit. MMI's proposed constructions largely paraphrase the claims, import examples from the specification, or add superfluous wording that does not resolve any material dispute, all of which courts have determined to be improper.

That said, this claim construction exercise should not obscure the broader procedural reality of this case. Even if the Court were to adopt MMI's constructions for purposes of GAT's Renewed Rule 12(c) Motion, not a single one of them changes the patent-eligibility analysis. Under MMI's own formulations, the claims still describe using conventional computer functionality to collect, store, transmit, classify, and present information for a background investigation. They do not identify an improvement to computer technology, and they do not add an inventive concept to the abstract idea previously addressed by the Texas court and the Federal Circuit.

## II. FACTUAL BACKGROUND

### A. Overview of the '098 and '188 Patents

The '098 Patent and the '188 Patent ("Patents-in-Suit") are both entitled "Background Investigation Management Service." The '098 Patent was issued on June 30, 2015. Ex. 2, *'098*

*Patent*, p. 1. Its child patent, the ’188 Patent, was issued on August 7, 2018. Ex. 1, *’188 Patent*, p. 1. Defendant Tyler J. Miller is listed as the sole inventor of both of the Patents-in-Suit. *Id*.

Notably, the specifications of the Patents-in-Suit are **identical**. *Compare* Exs. 1–2. The specifications explain that the “subject matter relates to a system to facilitate the process of performing background applications on a plurality of applicants.” Ex. 1, *’188 Patent*, at col. 1, lines 14-16; Ex. 2, *’098 Patent*, at col. 1, lines 14-16. In the “Background Information” of the Patents-in-Suit, the specifications note that:

> In many areas, but particularly in the area of law-enforcement pre-employment background investigations, investigators report they spend, on average, 40 hours per applicant investigation. During this process, the applicant typically completes ***a paper packet*** comprised of questions pertaining to the applicant’s life history, including information on criminal activity, financial history, drug history, listing relatives and personal references, employment history, and many other in-depth personal questions … The investigator typically uses resources available to him or her to confirm the information the applicant provided in the various documents, to include, contacting past employers, supervisors, neighbors, relatives, references, landlords, etc., which makes up the bulk of the investigator’s 40 hours per applicant of spent time.
>
> What has eluded the industry is an ***automated*** system to help a background investigator more efficiently and effectively conduct a background investigation.

Ex. 1 at col. 1, lines 20-40 (emphasis added); Ex. 2 at col. 1, lines 20-40. Describing the embodiment represented in FIG. 1 of the Patents-in-Suit, the specifications state that:

> software system **100** allows an organization **102** the ability to create and customize electronic documents **104** to be sent to applicants to complete via the software system **100**, and returned to the software system **100** in similar fashion. The software system 100 includes a document creation component **114** and a document management component **116**. The system **100** ***automates the majority of the tasks of a common pre-employment background investigation*** so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.

Ex. 1 at col. 4, lines 5-16 (emphasis added); Ex. 2 at col. 4, lines 1-11.

## III. ARGUMENT AND AUTHORITIES

### A. LEGAL STANDARD FOR CLAIM CONSTRUCTION

Claim construction is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). The starting point for claim construction is the words of the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (en banc). "There is a **heavy presumption** that claim terms are to be given their ordinary and customary meaning." *Massachusetts Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1118 (Fed. Cir. 2016) (quoting *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)) (emphasis added).

"District courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *Performance Designed Prods. LLC v. Okyn Holdings, Inc.*, No. 25-CV-01360-RBM-JLB, 2026 WL 1133743, at *3 (S.D. Cal. Apr. 27, 2026) (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)). "[I]t is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies." *Id.*; *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV1201861JGBDFMX, 2015 WL 12743875, at *2 (C.D. Cal. Apr. 30, 2015) ("In some instances, disputes as to the scope of claim terms can best be resolved simply by rejecting a proposed alternative definition in favor of the claim language itself") (giving nine of ten purportedly disputed terms their plain and ordinary meaning). Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The court's duties under *O2 Micro* are triggered by <u>a genuine disagreement over scope</u>, not by a party's preference to restate the claim in different words. The Federal Circuit has squarely held that restating a settled argument does not create an actual dispute within the meaning of O*2 Micro*. *See Summit 6*, 802 F.3d at 1291. Where "the plain and ordinary meaning of the disputed claim language is clear," the court "d[oes] not err by declining to construe the claim term." *Id.*

"There are only two circumstances where a claim is not entitled to its plain and ordinary meaning: '1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.'" *simplehuman, LLC v. iTouchless Housewares and Products, Inc.*, 506 F.Supp.3d 830, 832 (N.D. Cal. 2020) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). A Court does not need to construe "commonly used terms," i.e., terms that are "used in common parlance and ha[ve] no special meaning in the art." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (affirming lower court's decision not to construe claim term); *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC, 2022 WL 21306656, at *13 (N.D. Cal. Oct. 25, 2022). This is particularly true where "the surrounding language of the claim is instructive." *Summit 6,* 802 F.3d at 1290. Indeed, "when claim language does not depart from the ordinary meaning of its terms, no paraphrase—however artful—will capture the meaning of those terms as precisely as the terms themselves." *Star Envirotech, Inc.*, 2015 WL 12743875, at *3.

If a court needs to construe a claim term, it must "first consider the intrinsic evidence which consists of the claim language itself, the patent specification, and the patent prosecution history." *Vineyard Investigations v. E. & J. Gallo Winery*, No. 1:19-CV-01482-JLT-SKO, 2024 WL 2022549, at *3 (E.D. Cal. May 7, 2024). "It is both unjust to the public and an evasion of the law to construe an invention in a manner different from the plain import of its terms." *Phillips*, 415 F.3d at 1312 (internal quotations omitted). Thus, "it is improper to read a limitation from the specification into the claims." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). And, "interpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004).

"[I]f the meaning of the claim limitation is apparent from the intrinsic evidence alone, it is improper to rely on extrinsic evidence other than that used to ascertain the ordinary meaning of the claim limitation." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268–69 (Fed. Cir. 2001). "However, in the **rare circumstance** that the court is unable to determine the meaning of the asserted claims after assessing the intrinsic evidence, it may look to additional evidence that is extrinsic to the complete document record to help resolve any lack of clarity." *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)) (emphasis added). "This additional extrinsic evidence includes such evidence as expert testimony, articles, and inventor testimony." *Id*. "This extrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history." *Id.*

**B. THE COURT SHOULD DISREGARD MR. HOWELL'S DECLARATION**

MMI has indicated an intent to rely on a Declaration of David S. Howell in support of its proposed claim constructions, a copy of which is attached hereto as Exhibit 3 ("Howell Declaration"). Mr. Howell was also deposed in connection with his declaration. Excerpts from the transcript of that deposition are attached hereto as Exhibit 4 ("Howell Depo."). The Court should disregard all statements and opinions provided by Mr. Howell and afford them no weight.

Claim construction begins and ends with the intrinsic record where, as here, that record resolves the meaning of the purportedly disputed terms. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999). Mr. Howell's declaration is mere extrinsic advocacy. It contradicts the intrinsic record, imports limitations MMI never claimed, and, by Mr. Howell's own admission, offers attorney-crafted "clarity" rather than the ordinary meaning of the terms. Ex. 4, *Howell*

*Depo.*, p. 90. This is precisely the kind of extrinsic evidence the Federal Circuit has instructed courts to disregard. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005)

Extrinsic evidence, including expert testimony, is "less reliable than the patent and its prosecution history in determining how to read claim terms," in part because it "is generated at the time of and for the purpose of litigation and thus can suffer from bias." *Id.* For that reason, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful," and a court "should discount any expert testimony that is clearly at odds with" the intrinsic record. *Id*. (internal quotations omitted). The Federal Circuit has put the rule plainly: "expert testimony that is inconsistent with unambiguous intrinsic evidence should be accorded no weight." *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys*., 132 F.3d 701, 706 (Fed. Cir. 1997).

Consistent with these principles, courts routinely disregard expert claim-construction opinions that are conclusory, litigation-driven, inconsistent with the intrinsic record, or unnecessary to assist the Court. Expert claim-construction testimony is treated "with the utmost caution," particularly where it consists of "conclusory declarations devoid of supporting facts" or where the intrinsic record itself provides the necessary guidance. *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 301 F. Supp. 2d 970, 982 (S.D. Iowa), *modified*, 319 F. Supp. 2d 939 (S.D. Iowa 2004) (collecting cases).

Mr. Howell's testimony confirms that his declaration is not an independent analysis of the intrinsic record, but rather a post hoc endorsement of constructions developed by counsel. He did not decide which terms required construction. Asked why he addressed the terms he did, he testified, "Those are the ones I was asked to construe." Ex. 4, *Howell Depo.*, p. 40. When asked directly, "You didn't make that decision?," Mr. Howell confirmed that he did not. *Id*. Likewise, the proposed constructions themselves were "reduced to writing" by counsel. *Id*. Mr. Howell could not even say that he, rather than counsel, proposed the operative language. *See* Ex. 4, *Howell*

*Depo.*, p. 170. His testimony reflects that he reviewed and agreed with constructions presented to him, rather than independently deriving them from the intrinsic evidence. *Id.* at. 35.

More fundamentally, Mr. Howell admitted he was not offering the terms' plain and ordinary meaning at all. He testified that he was "proposing some clarity for" the terms. *Id.* at 90. Mr. Howell was specifically asked whether that was "something different" from giving the terms their plain and ordinary meaning from the perspective of a person of ordinary skill in the art. He agreed that it was. *Id.* at 91. Claim construction is not an exercise in redrafting otherwise understandable claim language. Expert testimony that admittedly rewrites claim terms to provide additional "clarity" is not evidence of ordinary meaning; it is litigation advocacy. Such testimony is precisely the type of conclusory, litigation-generated opinion that *Phillips* instructs courts to discount. *See Phillips*, 415 F.3d at 1318.

Further, where Mr. Howell's opinions can be tested against the intrinsic record, they conflict with it. Testimony clearly at odds with the intrinsic record is entitled to no weight. *See id*. For instance, the specification states that the applicant entry is a system record associated with the applicant and the organization "for whom the background check will be performed." MMI's construction changes "will be performed" to "is intended to be performed." Ex. 3, *Howell Decl.*, ¶ 42. Mr. Howell conceded that "intended" is his own addition, calling it "one of these clarity things that I really needed to have in" the construction. Ex. 4, *Howell Depo.*, p. 137. Asked where the specification supports "intended," he answered, "[i]t does not." *Id.* at 138. That admission alone demonstrates that the proposed construction does not derive from the intrinsic record.

The same pattern appears in MMI's proposed construction of "hyperlink." MMI's proposed construction includes the terms "hover," "automatically," and "button." Mr. Howell admitted that none of those terms appears in the McGraw-Hill dictionary definition on which he purportedly relied. Ex. 4, *Howell Depo.*, p. 164. He also testified that he does not even recall whether he himself

proposed the "followed automatically" language in the proposed construction of the "hyperlink" term. *Id*. at 171. These additions are not explanations of the claim term's meaning. Rather, they are implementation-specific limitations that appear nowhere in the claims. They do not go to the meaning of the term.

Mr. Howell likewise failed to identify any basis for departing from the plain and ordinary meaning of the disputed terms. A term departs from its plain and ordinary meaning only where the patentee acted as its own lexicographer or disavowed claim scope. *simplehuman, LLC*, 506 F.Supp.3d at 832. Mr. Howell identified neither. He conceded he could not point to an express "as used herein" definition and characterized the specification passages he relied on as, at most, "borderline" definitions. Ex. 4, *Howell Depo.*, p. 145. He further agreed that the disputed terms are ordinary: "'Questionnaire' is an everyday word" (*id*. at 145), and "class" and "category" are "words used by lay people every day." *Id*. at 193. Mr. Howell's own testimony concedes that no construction is required.

Finally, Mr. Howell's declaration demonstrates that much of his engagement concerns issues wholly unrelated to claim construction. He states that he was retained, among other things, "to provide my analyses and opinions on certain technical aspects of this dispute, including determining what was **well-understood, routine, and conventional** to a person having ordinary skill in the relevant art, prior to April 6, 2011." Ex. 3, *Howell Decl.*, ¶ 1 (emphasis added). Consistent with that assignment, he opines, in his declaration in support of MMI's claim construction, that certain features were "not well-understood, routine, or conventional" before that date. *Id*. at 37. Those opinions concern patent eligibility under 35 U.S.C. § 101, not the meaning of any disputed claim term. Moreover, Mr. Howell admitted that those opinions were not based on independent investigation, but on the declaration of Tyler Miller. *Id.*; *see also* Ex. 4, *Howell Depo.*, p. 61 (confirming reliance on the Declaration of Tyler Miller).

Howell's declaration is not a reliable source of claim meaning. It adopts attorney-drafted constructions, substitutes purported "clarity" for plain and ordinary meaning, imports limitations unsupported by the intrinsic record, and ventures into § 101 issues that are not before the Court in claim construction. Because the declaration is inconsistent with the intrinsic evidence and provides no meaningful assistance to the Court, it should be accorded no weight. *See Phillips*, 415 F.3d at 1318; *Bell & Howell*, 132 F.3d at 706. The Court should instead construe the disputed terms according to their plain and ordinary meaning as reflected in the intrinsic record.

**C. THE LEVEL OF ORDINARY SKILL IN THE ART**

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application. *Phillips*, 415 F.3d at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "Factors that may be considered in determining level of skill include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field." *Custom Accessories, Inc. v. Jeffrey-Allan Indus*., 807 F.2d 955, 962 (Fed. Cir. 1986). Considering these factors, a PHOSITA at the time of the alleged invention of the Patents-in-Suit would have had at least a bachelor's degree in computer science, engineering, or the equivalent, and at least three years of experience in the relevant field, which includes background investigation methods, systems, and technologies. However, GAT's positions remain the same even if the Court adopts MMI's description, or any other description, of a PHOSITA.

**D. CLAIM TERMS**

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "applicant entry" | "A system record associated with an applicant for a position with an organization, and the organization for whom the background check is intended to be performed." | No construction necessary; plain and ordinary meaning |

The Court need not construe "applicant entry" because the term is used in the claims according to its ordinary meaning and requires no special definition. *Summit 6, LLC*, 802 F.3d at 1291; *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (affirming district court's determination to give "addressed to a client" its plain and ordinary meaning). The claims themselves explain the role of the entry: it is "associated with" program data identifying the applicant, the position, the organization, and the investigator. The specification further makes clear that the term is used in accordance with its customary meaning: "[t]he applicant entry represents a system record associated with the applicant for the position with the organization, and for whom the background check **will be performed.**" Ex. 1, '188 Patent, 14:35–38; Ex. 2, '098 Patent, 14:39–42 (emphasis added). This language ties the "applicant entry" directly to an actual background check to be performed for that applicant, not merely a contemplated or potential check.

MMI's proposed construction ignores that intrinsic support by rewriting "will be performed" as "is intended to be performed." That change is not supported by the specification or the prosecution record; it adds an intent-based qualifier that the patentee never used and that does not appear in the claims, specification, or amendments cited to the examiner. The applicant chose mandatory, future-tense language ("will be performed") to describe the relationship between the applicant entry and the background check, and nothing in the file history suggests that language was meant to be weakened into a mere intention. This is precisely the kind of alteration that courts discourage. *Power Mosfet Techs.*, 378 F.3d at 1410. There is no genuine dispute as to the scope of "applicant entry."

MMI's purported expert testimony confirms the point. Mr. Howell relies on the specification's statement that an applicant entry represents a "system record associated with the applicant" and on a dictionary definition of "entry" as an element of information in a data structure. Ex. 3, *Howell Decl.*, ¶ 45. Those sources do not establish lexicography or disclaimer; at most, they show that the ordinary meaning of "entry" in a software context is readily understandable. The Court need not adopt MMI's full sentence construction merely because the specification provides one explanatory description of how the term is used. Mr. Howell's deposition further undermines MMI's construction because he admitted that the word "intended" does not appear in the specification passage on which he relies. Ex. 4, *Howell Depo.*, pp. 137–138. The scenario he used to justify adding "intended"—an applicant entry remaining an applicant entry if the background check is later cancelled—is not expressly disclosed in the specification. *Id*. Hence, the problem with MMI's construction: it does not simply construe the claim language. "Extrinsic evidence may not be used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Summit 6, LLC*, 802 F.3d at 1290.

MMI's construction also imports surrounding claim language, which then improperly renders those words superfluous. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed.Cir.2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.") (citations omitted).

The prior decisions also show why MMI's construction is unnecessary. The Federal Circuit analyzed the claim language using the ordinary understanding of an applicant entry associated with program data and still held that the claim recited routine information handling. *Federal Circuit Opinion*, 107 F.4th at 1352–54. Nothing in that analysis suggests that "applicant entry" carried a specialized meaning requiring construction.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "new applicant entry" | "An applicant entry that has not previously been stored in the system memory." | No construction necessary; plain and ordinary meaning |

The phrase "new applicant entry" is likewise readily understandable without construction. The modifier "new" is ordinary English and, in context, simply distinguishes the entry being created and stored from any applicant information that may already exist. The claims recite the operative act—"storing a new applicant entry in the system memory"—and the specification's process flow likewise begins with creating an applicant entry before later checking whether an applicant was previously entered. Ex. 1, '188 Patent, Fig. 63; Ex. 2, '098 Patent, Fig. 63. MMI's proposal, on the other hand, unnecessarily risks importing a temporal limitation not required by the claim language.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "previous applicant entry" | "An applicant entry previously stored in the system memory." | No construction necessary; plain and ordinary meaning |

"Previous applicant entry" also needs no construction. The word "previous" carries its ordinary meaning and is used in the claims to distinguish an earlier applicant entry from the new applicant entry. The claim language itself supplies the relevant context by reciting a search for a previous applicant entry associated with the same applicant and a different organization. As the Federal Circuit acknowledges,"[m]erely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004). MMI's proposed construction simply paraphrases the term and adds no meaningful clarification. Because there is no lexicography or disclaimer in the Patents-in-Suit, the Court should give the phrase its plain and ordinary meaning.

MMI's proposed constructions also risk creating unnecessary tension between "new applicant entry" and "previous applicant entry." The claims use those terms in a relational way: one entry is the entry being stored for the investigation, and the other is an earlier entry searched for in system memory. The ordinary words "new" and "previous" already perform that function. Adding MMI's storage-focused definitions risks turning the modifiers into separate technical limitations untethered from the surrounding claim language. As such, the parties do not genuinely dispute how the modifiers "new" and "previous" operate. The modifiers present no genuine scope dispute. Thus, the plain and ordinary meaning controls.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "electronic documents" | "Documents stored, transmitted, or accessed in digital form by a computing device." | No construction necessary; plain and ordinary meaning |

The term "electronic documents" is a common, nontechnical phrase used throughout the claims and specification according to its ordinary meaning. *See Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 326 F.Supp.2d 1060, 1084 (C.D. Cal. 2003) (finding "caller provided data" and "to interactively enter data" to not require special definitions). The claim language confirms that no construction is needed. Where the claims require a particular use of electronic documents, they say so: the applicant hyperlink is "for viewing" an applicant set of electronic documents, and the reference hyperlink is "for viewing" a reference set of electronic documents. MMI's broader "stored, transmitted, or accessed" wording would substitute away from the actual claim requirements and further toward generic computer handling of documents, which is discouraged. *Alltech, Inc. v. Cenzone Tech, Inc.*, No. 06 CV 0153 JM (RBB), 2007 WL 5793393, at *5 (S.D. Cal. Jan. 4, 2007) (declining to "construe 'modified' as simply 'altered' " because "[t]his construction merely substitutes one word for another without clarifying the disputed term's meaning"). The specification also repeatedly contrasts electronic documents with "hardcopy" or

paper documents and explains that the system allows organizations to create and customize electronic documents to be sent to applicants and returned through the software system. MMI's proposed construction is unnecessary because it merely describes examples of how electronic documents may be stored, transmitted, or accessed, and risks converting illustrative functionality into a claim limitation. *See Verizon California Inc*, 326 F. Supp. 2d at 1084 (declining to improperly add limitations to the claim language).

Mr. Howell's testimony reinforces why no construction is needed. He explains that, in a web-based software system, a person of ordinary skill would understand "documents" to refer to digital documents and relies on dictionary definitions describing electronic document-management systems. Ex. 3, *Howell Decl.*, ¶ 45–52. In fact, he stated that "it makes express what such a PHOSITA would in any event understand from the software-system context." *Id.* at ¶ 47. If a PHOSITA would already understand it correctly, there is no genuine dispute as to scope, and any additional words would be superfluous. *Merck & Co.*, 395 F.3d at 1372.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "applicant set of electronic documents" | "One or more electronic documents made available to the applicant." | No construction necessary; plain and ordinary meaning |

"Applicant set of electronic documents" requires no construction beyond the plain meaning of its constituent words. The claims recite that the applicant hyperlink is "for viewing" that set of documents, and the specification describes electronic documents selected for applicants to review, complete, and return through the software system. Ex. 1, '188 Patent, 4:5–16; Ex. 2, '098 Patent, 4:1–11. MMI's proposed construction—"one or more electronic documents made available to the applicant"—does not resolve any genuine ambiguity and would replace the claim language with a paraphrase that adds nothing material. *See Microbes, Inc. v. Espoma Co.*, No. 2:09-CV-237-CE,

2011 WL 1375608, at *21 (E.D. Tex. Apr. 12, 2011) (refusing constructions that "merely reorganize the claim language")

MMI's "made available" formulation is also less precise than the claim language. The claims do not merely require that documents be made available in some unspecified way; they recite hyperlinks "for viewing" identified sets of electronic documents. Replacing that language with "made available" does not clarify scope and may broaden the claim beyond the mechanism the claims actually recite. MMI's position is especially precarious because it previously objected to the proposed substitution of "accessing" for "viewing," instead arguing in favor of plain and ordinary meaning. *Oklahoma Action*, Dkt. 117, p. 14 ("there is no ambiguity about the meaning of this term as it is used in the claim.").

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "reference set of electronic documents" | "One or more electronic documents made available to the reference / reference source." | No construction necessary; plain and ordinary meaning |

The phrase "reference set of electronic documents" is equally straightforward. The claims explain that the set is selected based on a reference class and are "for viewing" through a reference hyperlink. The specification describes the same concept in ordinary terms: documents may be associated with a reference type and then sent to the appropriate reference. Ex. 1, '188 Patent, 8:31–37; Ex. 2, '098 Patent, 8:29–35. MMI's construction is unnecessary because it restates that the documents are made available to the reference, which is already apparent from the claim language. MMI's proposed construction should be avoided in favor of the plain and ordinary meaning.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "first reference set of electronic | Same as "reference set of electronic documents." | No construction necessary; plain and ordinary meaning |

| | | |
|---|---|---|
| documents” | | |

GAT agrees that “first reference set of electronic documents” does not need a separate construction but disagrees that a construction is necessary at all for all of the above reasons. “First reference set of electronic documents” should be given its plain and ordinary meaning in accordance with claim language.

The parties agree this phrase denotes the set of electronic documents selected based on the reference class and made viewable through the reference hyperlink. GAT does not dispute that those documents are made available to the reference, as the claims provide. Because the parties agree on what the set is and how it is used, MMI’s “made available” formulation restates the claim rather than presenting any genuine question of scope. Plain and ordinary meaning controls, and “first reference set of electronic documents” is treated identically.

| **Claim Term** | **MMI’s Proposed Construction** | **GAT’s Proposed Construction** |
|---|---|---|
| “hyperlink” | “A reference to data that the reader can directly follow either by clicking or by hovering or that is followed automatically, which may be visually presented as a button or as text.” | No construction necessary; plain and ordinary meaning |

The term “hyperlink” needs no construction because it is used in its ordinary sense: an applicant or reference is transmitted a hyperlink for viewing electronic documents. *See Performance Designed Prods. LLC v. Okyn Holdings, Inc.*, No. 25-CV-01360-RBM-JLB, 2026 WL 1133743, at *12 (S.D. Cal. Apr. 27, 2026) (“video game controller” needs no construction, as it “is used in common parlance,” “has no special meaning in the art,” and “the plain and ordinary meaning” is clear). The specification similarly describes an email invitation with a link that allows an applicant or reference to enter the system. *See* Ex. 1, ’188 Patent, 8:31–37; Ex. 2, ’098 Patent, 8:29–35. On the other hand, MMI’s lengthy definition is unnecessary and potentially confusing

because it introduces alternatives such as hovering, automatic following, buttons, and text that are not needed to resolve any claim-scope dispute. These additional limitations were noticeably absent from its prior proposed construction in the Oklahoma Action of "a link from a hypertext file or document to another location or file, typically activated by clicking on a highlighted word or image on the screen." *Oklahoma Action*, Dkt. 117, pp. 16–17.

MMI's expert relies on a common dictionary definition of "hyperlink" to add "hovering," automatic following, buttons, images, and other presentation details. Ex. 4, *Howell Depo*., pp. 115–117; 162–173. But those details are not drawn from the claim language and are unnecessary to resolve any alleged dispute here. The claims already state what the hyperlinks do: they are transmitted to an email address and are for viewing a set of electronic documents. Adding a catalogue of possible hyperlink implementations would invite collateral disputes about embodiments that have no bearing on the claim scope.

Mr. Howell's deposition exposes the overreach in MMI's proposed construction. He admitted that "hyperlink" was common parlance in 2011; **is not a technical term**; most jurors would be familiar with clicking on links; and that the McGraw-Hill definition he relied upon does not use the words "hover," "automatically," or "button." Ex. 4, *Howell Depo*., pp. 115–117; 162–173. He also could not identify any disclosure in either of the Patents-in-Suit describing following a hyperlink by hovering or by automatic following, and the specification instead describes an applicant being invited to click on a link. *Id*. Those admissions confirm that MMI's construction adds unsupported implementation details rather than construing the term.

Mr. Howell's testimony, unsurprisingly, does not address that MMI's proposed construction of "hyperlink" appears to be drawn principally from the prosecution history of the '098 Patent. During prosecution, MMI amended the term "link" to "hyperlink" to distinguish between two different uses of the word "link" in the specification. Exhibit 5, *Amendment/Reply to Non-Final*

*Office Action*, December 9, 2014, p. 10. GAT does not dispute that language from MMI's proposed construction appears in the file history, nor does it dispute the ordinary understanding reflected by that language. But that does not mean the Court must formally construe an ordinary word where there is no genuine claim-scope dispute requiring construction. Nothing about the parties' actual dispute turns on whether a hyperlink may be followed by clicking, hovering, or automatically, or whether it is displayed as a button rather than text.

MMI's arguments supporting its "hyperlink" amendment do not displace the ordinary meaning of "hyperlink." The amendment distinguished a "communication link" from the ordinary hyperlinks an applicant or reference uses to access the system; it separated two uses of the word "link," but did not redefine "hyperlink" away from its ordinary meaning. *Id*. MMI's construction describes ordinary *interaction* with a hyperlink rather than what a PHOSITA would understand "hyperlink" to mean. MMI's arguments supporting its amendment simply do not transform the term into a specially defined claim term. Because the prosecution history merely confirms the ordinary meaning, adopting plain and ordinary meaning reaches the same result without importing an unnecessary construction.[2]

Additionally, the Federal Circuit specifically considered MMI's argument that transmitting hyperlinks by email prevented the claims from being abstract and rejected it, explaining that the inability to perform every step mentally does not alone confer patentability and that using a computer does not transform an abstract process into an improvement in computer functionality.

---

[2] To the extent MMI contends that its prosecution statements carry limiting force, that argument belongs, at most, to prosecution-history estoppel and the doctrine of equivalents, not to the literal construction of an ordinary term. No doctrine-of-equivalents issue is before the Court now. For these reasons, there is no genuine dispute as to the meaning of "hyperlink," and the term—along with "applicant hyperlink" and "reference hyperlink," which merely identify the recipient of each transmitted hyperlink—should receive its plain and ordinary meaning.

*Federal Circuit Opinion,* 107 F.4th at 1353. That reasoning supports GAT's position here: "hyperlink" does not need a special construction to resolve this case.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "applicant hyperlink" | "A hyperlink delivered to the applicant." | No construction necessary; plain and ordinary meaning |

"Applicant hyperlink" should receive its plain and ordinary meaning for the same reasons. The claim language itself identifies the recipient and function of the hyperlink: it is transmitted to an applicant email address and is for viewing the applicant set of electronic documents. MMI's phrase "delivered to the applicant" is merely an imprecise paraphrase of the claim language inexplicably substituting "transmitted" for "delivered to." *Alltech*, *Inc.*, 2007 WL 5793393, at *5 (rejecting proposed construction because it "merely substitutes one word for another without clarifying the disputed term's meaning").

Additionally, the word "applicant" does all the work MMI's construction tries to add. A hyperlink recited as an "applicant hyperlink," transmitted to an applicant email address, and used for viewing an applicant set of electronic documents is already tied to the applicant by the claim language. "Delivered to the applicant" is therefore redundant and potentially less accurate than the claim's actual "transmitting ... to an applicant email address" language.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "reference hyperlink" | "A hyperlink delivered to the reference / reference source." | No construction necessary; plain and ordinary meaning |

The same analysis applies to "reference hyperlink." The claim language states that the reference hyperlink is transmitted to the reference email address and is for viewing the reference set of electronic documents. A construction replacing that language with "a hyperlink delivered to

the reference/reference source" adds no clarity and risks inviting disputes about "delivery" that the claim does not require.

MMI's "delivered to" language is also inferior to the claim text because the claims specify transmission to an email address, not delivery to a person in the abstract. The Court should not replace a precise claim limitation with an ambiguous paraphrase that may generate avoidable disputes over what "delivered" means.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "first reference hyperlink" | Same as "reference hyperlink." | No construction necessary; plain and ordinary meaning |

GAT agrees that no separate construction for "first reference hyperlink" is necessary, but disagrees that the court should construe these terms at all for the above reasons. Instead, they should be given their plain and ordinary meaning.

The modifiers "applicant" and "reference" simply identify the recipient email address to which each hyperlink is transmitted, as the claims recite. They raise no separate dispute. No construction is necessary to resolve any actual controversy in this case.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "program data" | "Data comprising information about one or more persons or organizations that may be useful to the system." | No construction necessary; plain and ordinary meaning |

"Program data" needs no construction because it is used in the claims according to its ordinary meaning. It simply identifies the data the system receives, stores, and uses. *See Baxter Int'l, Inc. v. CareFusion Corp.*, No. 15 C 9986, 2019 WL 1897063, at *4 (N.D. Ill. Apr. 29, 2019) ("'A plurality of sets of configuration parameters'…requires no further construction and the terms will be given their plain and ordinary meaning" because "the claim is comprised of commonly used terms"). In fact, the claims themselves describe particular program data—such as information

identifying the applicant, the position, the first organization, the investigator, and information regarding a reference source. The specification likewise uses “program data” in connection with applicant or organizational data stored in system memory. Ex. 1, ’188 Patent, 12:67–13–11; Ex. 2, ’098 Patent, 13:5–16. Thus, MMI’s proposed construction is unnecessary and broadens the term into a generic description of “one or more persons or organizations,” rather than following the claim language.

The prior § 101 rulings underscore this point. The Federal Circuit treated the claimed data elements according to their ordinary role in the claim—information identifying applicants, organizations, investigators, and references—and held that the claims merely collected and organized information. *Federal Circuit Opinion*, 107 F.4th at 1352. MMI’s proposed construction adds abstraction, not clarity.

MMI’s construction further risks divorcing “program data” from the particular data recited in each claim. The claims do not use the phrase as an open-ended label for any potentially useful person-or-organization information. They repeatedly define the relevant program data by what it contains in context. The Court should not replace those contextual limitations with a broad generic definition.

| Claim Term | MMI’s Proposed Construction | GAT’s Proposed Construction |
|---|---|---|
| “first set of program data” | “A set of program data.” | No construction necessary; plain and ordinary meaning |

“First set of program data” requires no construction, as evidenced by the fact that MMI’s proposed construction is simply the words of claim term. The claims define the content of the first set by reciting that it comprises information identifying the applicant, the position, the first organization, and the investigator. MMI’s proposal—“a set of program data”—is circular and does not assist the Court or the factfinder. The phrase should be given its plain and ordinary meaning

in light of the surrounding claim language. *Star Envirotech, Inc.*, 2015 WL 12743875, at *3 ("when claim language does not depart from the ordinary meaning of its terms, no paraphrase—however artful—will capture the meaning of those terms as precisely as the terms themselves").

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "second set of program data" | "A set of program data, distinct from the first set." | No construction necessary; plain and ordinary meaning |

"Second set of program data" is similarly self-explanatory. The claims identify what the second set contains, including information regarding the applicant, the second organization, the position applied for in the second organization, and the status of a previous application. MMI's proposed construction simply says that the set is distinct from the first set, which the word "second" already conveys. *Star Envirotech*, 2015 WL 12743875, at *3 ("Unnecessarily paraphrasing claim terms where no dispute exists as to claim scope would be inappropriate for multiple reasons.")

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "reference set of program data" | "A set of program data regarding a reference source." | No construction necessary; plain and ordinary meaning |

"Reference set of program data" also needs no construction. Once again, MMI's definition merely repackages the words of the claim—showing exactly how unnecessary it is to provide a construction. *Star Envirotech*, 2015 WL 12743875, at *3. The claims, doing all of the required work, expressly state that the reference set of program data comprises information regarding a reference source, including a reference email address associated with that reference source. MMI's construction merely repeats that the data is "regarding" a reference source and therefore does not clarify the scope of the claim. In fact, MMI previously argued that "[n]o construction is needed for this term." *Oklahoma Action*, Dkt. 117, p. 16. Indeed, now "[t]here is no ambiguity about the

meaning of this term as it is used in the claims." *Id*. In light of the findings by the Texas court and affirmance by the Federal Circuit, GAT is bound to agree with MMI that no construction is necessary.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "questionnaire" | "An electronic document that contains one or more questions." | No construction necessary; plain and ordinary meaning |

"Questionnaire" is an ordinary word and is used in the Patents-in-Suit in its ordinary sense. *Star Envirotech*, 2015 WL 12743875, at *4 ("[I]t is not the duty of this Court to serve as a general-purpose dictionary with respect to the ordinary meaning of common words"). The specification describes questionnaires and forms that applicants or references complete, and explains that the system allows users to build questionnaires with questions and different styles of answers. Ex. 1, '188 Patent, 5:64–6:18; Ex. 2, '098 Patent, 5:55–6:9. MMI's construction—"an electronic document that contains one or more questions"—improperly imports "electronic document" into the term itself, even though the claims separately recite electronic documents where that limitation is intended. The Court should not narrow "questionnaire" beyond its plain meaning.

Further, Mr. Howell's declaration does not justify importing "electronic document" into "questionnaire." His opinion relies on the fact that the patents describe questionnaires used in a web-based system. Ex. 3, *Howell Decl.*, ¶ 54. But, the patentee knew how to claim "electronic documents" when that limitation was intended and did so repeatedly. Construing "questionnaire" to mean "electronic document that contains one or more questions" would collapse distinct claim terms and improperly narrow the ordinary word "questionnaire." His deposition confirms the same point. Mr. Howell admitted that "questionnaire" is an everyday word and that questionnaires have meaning in the hiring context outside of software. Ex. 4, *Howell Depo*., pp. 125–26; 174–176. He also acknowledged that the specification discusses printing a questionnaire and mailing materials,

even though he attempts to limit "questionnaire" to an electronic document. *Id*. MMI's construction therefore narrows an ordinary term by importing a separate claim limitation that the patentee used elsewhere when intended.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "inter-active questionnaire" | "A questionnaire where the use or content of at least one question depends on the answer to one or more prior questions." | No construction necessary; plain and ordinary meaning |

"Inter-active questionnaire" should also receive its plain and ordinary meaning. There is no pertinent lexicography or disclaimer. The claims themselves provide all necessary context by referring to a questionnaire in which the next question may be based on a response to a prior question: "wherein one document of the applicant set of electronic documents is an inter-active questionnaire in which a next question presented to the reference source is based on a response to a prior question." This is yet another time in which there is really no dispute as to scope, but MMI would rather create the mirage of a dispute presumably to avoid a judgment of invalidity. Adding words that are already in the claim language into the definition of a single term simply renders either the claim language or that definition superfluous, which is disfavored because it is nothing more than paraphrasing or restructuring. *See DMF, INC. v. AMP Plus, Inc*, No. 2:18-CV-07090-CAS-GJS, 2019 WL 13548313, at *5 (C.D. Cal. Aug. 2, 2019) (observing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (quoting *C.R. Bard, Inc*., 388 F.3d at 863).

The specification also explains that the form builder can ask additional sub-questions based on an applicant's response. Ex. 1, '188 Patent, 5:64–6:18; Ex. 2, '098 Patent, 5:55–6:9. MMI's construction largely repeats that concept, but it replaces the claim language with a broader formulation about the "use or content" of questions. "Use or content" is not language that can be

found in the Patents-in-Suit. The claim recites that a next question presented is based on a response to a prior question, while MMI's construction changes that to the "use or content" of at least one question depending on one or more prior questions. MMI's unfounded proposal impermissibly broadens the claim language.

Additionally, the Federal Circuit held that the Invalidated Claims' steps of receiving and transmitting information were part of the familiar class of abstract information-processing claims, and the Remaining Claims' questionnaire limitations are more of the same—ordinary information gathering in a background investigation. *Federal Circuit Opinion*, 107 F.4th at 1352–54.

Here, there is no genuine dispute regarding the meaning of "inter-active questionnaire." The claim expressly recites a questionnaire in which "a next question presented to the reference source is based on a response to a prior question," and the specification describes the same response-dependent branching. GAT does not dispute what interactivity means in that context. Because both sides agree on that functional requirement—which the claim language itself supplies—no genuine scope dispute exists, and the phrase should be given its plain and ordinary meaning in light of the claim.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "classes of questionnaires" | "A grouping of questionnaires related by the type of intended respondent." | No construction necessary; plain and ordinary meaning |

"Classes of questionnaires" is readily understandable in the context of the claims. *Summit 6, LLC*, 802 F.3d at 1291. The claims recite creating a plurality of questionnaires, each being a member of at least one class of questionnaires, with each class related to a type of reference. The specification describes reference types—such as relatives, employers, supervisors, co-workers, neighbors, and personal references—and explains that reference documents and questionnaires can be managed by reference type. Ex. 1, '188 Patent, 8: 22–24; Ex. 2, '098 Patent, 8:17–23.

MMI's construction improperly substitutes "intended respondent" for the claim's own "type of reference" language and therefore risks altering the claim scope. The Court should not replace the patentee's chosen language with a broader and less precise formulation. If anything, the claim language confirms that the relevant grouping is tied to reference type, not to a baseless concept of "intended respondents."

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "reference" / "first reference" / "reference source" | "A person (including a person acting on behalf of an entity) invited to provide information regarding an applicant." | No construction necessary; plain and ordinary meaning |

The terms "reference," "first reference," and "reference source" should be given their plain and ordinary meaning. *Star Envirotech*, 2015 WL 12743875, at *4 The claims themselves state that the reference source is "a person." MMI's construction adds the phrases "including a person acting on behalf of an entity" and "invited to provide information," neither of which is a part of or necessary to understand the claim language. These phrases are MMI's gloss, not claim construction. The Court can accept the ordinary person-based use of the term without adopting MMI's extra wording.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "reference class" / "type of reference" / "type of reference source" | "A category of reference/reference source, classified according to the relationship of the reference source to the applicant (e.g., relative, former employer, supervisor, co-worker, neighbor, personal reference, character reference), as identified by the applicant supplied program data." | No construction necessary; plain and ordinary meaning |

"Reference class," "type of reference," and "type of reference source" are ordinary phrases that the claims explain. *Summit 6, LLC*, 802 F.3d at 1291. The claims recite determining a

reference class based on program data regarding the reference source and selecting documents based on that class. The specification provides examples of reference types but does not redefine the terms or limit them to any closed list. MMI's construction improperly imports examples such as relative, former employer, supervisor, co-worker, neighbor, personal reference, and character reference into the claim. Those examples may illustrate the invention, but they should not be converted into limitations, as evidenced by the fact that MMI itself did not attempt such a maneuver in the Oklahoma Action. *Oklahoma Action*, Dkt. 117, pp. 16–17 (MMI proposing "a category of reference source having some property or attribute in common and differentiated from other categories of reference sources" for the term "reference class").

In his deposition, Mr. Howell admitted that "class" and "category" are words used by lay people every day, that "class" is used in a nontechnical way in the patents, and that he preferred a general-purpose dictionary definition over technical computer-science definitions because the technical definitions were irrelevant. Ex. 4, *Howell Depo*., pp. 108-111. He also admitted that the parenthetical examples in MMI's construction are not limiting and that the specification example includes "creditor," which MMI's list omits. *Id.* at 196–197. The Court should not instruct a jury with a nonlimiting, incomplete example list that even MMI's purported expert could not tie to a definition in the patents.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
| --- | --- | --- |
| "determining a reference class" | "Classifying the reference source by type according to the applicant-supplied program data about the reference source, where the classification governs the selection of class-specific electronic documents for transmission to that reference source." | No construction necessary; plain and ordinary meaning |

The phrase "determining a reference class" should not be rewritten. The claims already recite how the class is determined (based on program data regarding the reference source) and what follows from that determination (the selection of a reference set of electronic documents). MMI's proposal adds a functional consequence that the "classification governs" document selection, but that relationship is already present in the claim. The construction is therefore redundant and risks confusing the jury by collapsing separate claim limitations into one phrase. *Power Mosfet Techs.*, 378 F.3d at 1410. In other words, the claim first recites determining a reference class and then separately recites selecting documents based on that class. MMI's construction folds the selection limitation back into the determining step by saying the classification "governs" selection. The Court should preserve the claim's structure rather than compress multiple limitations into one construction. *Merck & Co.*, 395 F.3d at 1372.

The parties do not genuinely dispute what this step requires: the system classifies the reference by type based on program data regarding that reference, and the resulting class is then used to select the reference's set of electronic documents, which is the same sequence the claims recite. GAT does not dispute that the determined class informs the later document-selection step. Because the parties agree on how the class is determined and used, and because the claims already recite the determining step and the selection step in their own words, there is no genuine scope dispute— the claim language governs each step, and no rewriting is necessary.

| **Claim Term** | **MMI's Proposed Construction** | **GAT's Proposed Construction** |
|---|---|---|
| "suggested reference list" | "A list of references suggested by the system, including one or more law enforcement agencies and/or courts." | No construction necessary; plain and ordinary meaning |

"Suggested reference list" is not a term requiring construction. The respective claims already state that the list includes one or more law enforcement agencies and, in the '098 Patent, law enforcement agencies and/or courts within a pre-defined radius around the applicant

residential address. The specification describes the "Address Locator" feature in ordinary terms: the system retrieves law enforcement and court names, addresses, and phone numbers for a pre-defined radius around relevant addresses and presents a list for the user to select from. MMI's construction repeats part of that language without resolving any actual dispute. *Performance Designed Prods. LLC*, 2026 WL 1133743, at *3. Worse, construing "suggested reference list" as MMI proposes would add "and/or courts" to the Remaining Claims of the '188 Patent where that language exists in the '098 Patent. MMI's blatant attempt to fabricate a claim scope dispute should be ignored; it did not attempt to add such limitations before in the Oklahoma Action. *Oklahoma Action*, Dkt. 117, pp. 16–17 (MMI proposing "a list of references suggested by the system" for the term "suggested reference list.")

The Texas court already addressed this feature in substance. It held that generating a suggested list of law enforcement agencies based on an applicant's address was no different from finding an applicant's address on a map and locating nearby law enforcement agencies; the claimed method simply performed that step using a computer and the internet. *Texas Invalidity Order*, 598 F.Supp.3d at 499. The same order shows the court applying the radius language as written: it identified the feature by the specification's own name—the "Address Locator," which "will retrieve law enforcement and court names, addresses and phone numbers for a pre-defined radius around the applicant's past and current addresses." *Id.* at 490. The Federal Circuit affirmed, rejecting MMI's reliance on the suggested-reference-list limitation and holding that the specification itself confirmed that the claim used conventional components and routine data-gathering steps. *Federal Circuit Opinion*, 107 F.4th at 1353–54. Indeed, the Federal Circuit rejected MMI's argument as to this very limitation, grouped with the hyperlink steps: MMI argued the claims could not be abstract because "certain limitations, such as the transmitting hyperlinks

via email steps and generating a suggested reference list steps, cannot be done in the mind or by pen and paper," and the court was "not persuaded." *Id.* at 1353.

| Claim Term | MMI's Proposed Construction | GAT's Proposed Construction |
|---|---|---|
| "generating a suggested reference list" | "A computer-implemented operation that identifies, based on a distance threshold fixed in advance, the set of law enforcement agencies and/or courts whose locations fall within that distance threshold measured from the applicant's residential address." | No construction necessary; plain and ordinary meaning |

"Generating a suggested reference list" should also be given its plain and ordinary meaning. The claim language already specifies the operative act and the inputs: generating a suggested list of law enforcement agencies, or law enforcement agencies and/or courts, based on an applicant residential address or selected address. The specification's discussion of an address locator confirms that this phrase is used in an ordinary descriptive sense, not as a specially defined technical term. Ex. 1, '188 Patent, 9:47–52; Ex. 2, '098 Patent, 9:46–51.

Moreover, MMI's construction improperly adds a "distance threshold fixed in advance" and "locations" limitation that is not required by the '188 Patent claims and, at most, reflects language appearing in certain '098 Patent claims. For example, some claims expressly recite a "pre-defined radius" (Claims 1, 5, and 9 of the '098 Patent); others do not. Some refer to just law enforcement agencies (Invalidated Claims 1, 5, and 15 and Remaining Claim 9 of the '188 Patent); others refer to law enforcement agencies and/or courts (Remaining Claims 1, 5, and 9 of the '098 Patent). The Court should avoid importing those limitations across claims and patents where the patentee chose different words. Indeed, MMI's proposed construction would erase those claim-by-claim differences and improperly narrow claims that omit that limitation.

In any event, the parties do not genuinely dispute the meaning of these phrases: the claims require generating a suggested list of one or more law enforcement agencies (and, in certain '098

claims, courts) based on the applicant's residential address or a selected address. GAT does not dispute that, where a claim recites a "pre-defined radius," the list is bounded by that radius. The parties' only apparent difference is whether a fixed distance-threshold limitation should be read into claims that do not recite one. That is not a dispute about the meaning of "generating a suggested reference list"—that phrase means the same thing in every claim. It is a request to add a limitation to claims that omit it, which the claim language resolves on its face: each claim states its own metes and bounds, and the "pre-defined radius" limitation applies where, and only where, a claim recites it. Read consistently with each claim's express terms, there is no genuine scope dispute for the Court to resolve, and the phrases should be given their plain and ordinary meaning.

## **CONCLUSION**

For any or all of the above reasons, the Court should not construe any of the above claim terms but should give them their plain and ordinary meaning.

Dated: July 29, 2026

BOUTIN JONES INC.
Attorneys at Law

Robert D. Swanson
Daniel S. Stouder

and

DUNLAP CODDING PC
Attorneys at Law
Douglas J. Sorocco

and

RYAN WHALEY PLLC
Attorneys at Law

by: <u>*/s/ Evan Talley*</u>
Evan W. Talley

Attorneys for Plaintiff
Guardian Alliance Technologies, Inc.

CASE: *Guardian Alliance Technologies v. Miller Mendel, et al.*

CASE NO. USDC Eastern District of California Case No. 2:22-CV-01390-WBS-AC

## CERTIFICATE OF SERVICE

I am over the age of eighteen years and not a party to the foregoing action.

On July 29, 2026, I served the within:

| | |
|---|---|
| | **by mail** on all parties in said action by regular, first class United States mail, postage fully pre-paid, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. |
| | **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below. |
| | **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c). |
| X | **by electronic filing with the Clerk of the Court using the CM/ECF System** in accordance with F.R.C.P 5(b)(2)(D) and the above Court's Local Rules, I electronically filed the foregoing with the Clerk of the Court for the United States District Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. |
| | **on non-CM/ECF participants** in accordance with F.R.C.P 5 and the above Court's Local Rules and pursuant to the above Court's Notice of Electronic filing some of the participants in the case are not CM/ECF users and must be served using conventional means. Therefore, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, to the following non-CM/ECF participants by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At Boutin Jones Inc., mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on July 29, 2026.

*/s/ Evan W. Talley*
Evan W. Talley