**BOUTIN JONES INC.**
Robert D. Swanson (CA Bar No. 162816)
Daniel S. Stouder (CA Bar No. 226753)
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
T: (916) 321-4444/F: (916) 441-7597
Email: rswanson@boutinjones.com
dstouder@boutinjones.com

**RYAN WHALEY PLLC**
Evan W. Talley (*Pro Hac Vice*)
400 North Walnut Avenue
Oklahoma City, OK 73104
T: (405) 239-6040
Email: etalley@ryanwhaley.com

**DUNLAP CODDING PC**
Douglas J. Sorocco (*Pro Hac Vice*)
609 West Sheridan Avenue
Oklahoma City, OK 73102
T: (405) 607-8600/F: (405) 607-8686
Email: dsorocco@dunlapcodding.com

***Attorneys for Plaintiff***
***Guardian Alliance Technologies, Inc.***

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation;

Plaintiff,

vs.

MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual;

Defendants.

**Case No. 2:22-CV-01390-WBS-AC**

**PLAINTIFF GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: October 13, 2026
Time: 1:30 p.m.
Judge: Hon. William B. Shubb
Courtroom 5, 14th Floor
501 I Street
Sacramento, CA 95814

Complaint filed: August 5, 2022

**TO THE COURT, CLERK OF COURT, AND DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** October 13, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable William B. Shubb, United States District Court for the Eastern District of California, located in Courtroom 5, 14th Floor at 501 I Street, Suite 4-200, Sacramento California 95814. Plaintiff Guardian Alliance Technologies, Inc ("GAT") will and hereby does move the Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101, as to its third and fourth causes of action for invalidity of claims 2–4 and 6–14 of U.S. Patent No. 10,043,188 and all of the claims, 1–14, of its parent patent, U.S. Patent No. 9,070,098 (collectively, the "Remaining Claims"). *See* Dkt. No. 51, *First Amended Complaint*, pp. 42–43.

GAT bases its Renewed Motion upon this Notice of Motion, the Memorandum of Points and Authorities, the record and pleadings included herewith, and such other and further documentary, demonstrative, or oral evidence as may be requested or permitted by the Court.

DATED: July 29, 2026

s/ Evan W. Talley
**RYAN WHALEY PLLC**
Evan W. Talley (*Pro Hac Vice*)
400 North Walnut Avenue
Oklahoma City, OK 73104
T: (405) 239-6040
Email: etalley@ryanwhaley.com

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................ 1

II. STATEMENT OF THE ISSUES TO BE DECIDED ........................................ 2

III. PROCEDURAL HISTORY ........................................ 2

IV. FACTUAL BACKGROUND ........................................ 4

A. DISCLOSURES OF THE ’098 AND ’188 PATENTS ........................................ 4

B. THE REMAINING CLAIMS ........................................ 6

C. CLAIM CONSTRUCTIONS ........................................ 8

V. ARGUMENT AND AUTHORITIES ........................................ 12

A. THE STANDARD FOR RULE 12(c) MOTIONS FOR JUDGMENT ON THE PLEADINGS TO INVALIDATE UNDER 35 U.S.C. § 101 ........................................ 12

B. THE REMAINING CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 ........................................ 14

(1) Alice Step One: Like the Invalidated Claims, the Remaining Claims are directed to the abstract idea of conducting background checks ........................................ 14

(2) Alice Step Two: Like the Invalidated Claims, the Remaining Claims do not contain an inventive concept ........................................ 17

CONCLUSION ........................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ... 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ... Passim

*Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ... 19

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) ... 7, 19

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ... 3

*Bascom Research, LLC v. LinkedIn, Inc.*, Case No. 12-CV-06293-SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ... 19

*BuySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) ... 12, 13, 16

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed Cir. 2017) ... 7

*Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020) ... 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) ... 7, 11, 13

*Diamond v. Diehr*, 450 U.S. 175 (1981) ... 14

*Dworkin v. Hustler Mag.*, Inc., 867 F.2d 1188 (9th Cir. 1989) ... 12

*Elec. Power Group, LLC v. Alstom S.A.*, 830 F. 3d 1350 (Fed. Cir. 2016) ... 17

*Entropic Commc'ns, LLC v. DISH Network Corp.*, 767 F. Supp. 3d 1043 (C.D. Cal. 2025) ... 7

*e-Numerate Sols., Inc. v. United States*,
149 Fed. Cl. 563 (2020) .......... 7

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) .......... 11, 13, 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1989) .......... 12

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) .......... 14

*Kaavo Inc. v. Amazon.com Inc.*,
323 F. Supp. 3d 630 (D. Del. 2018) .......... 16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66, 132 S. Ct. 1289 (2012) .......... 14, 17

*Miller Mendel, Inc. v. City of Anna, Texas*,
107 F.4th 1345 (Fed. Cir.) .......... Passim

*Miller Mendel, Inc. v. City of Anna, Texas*,
598 F. Supp. 3d 486 (E.D. Tex. 2022) .......... Passim

*Miller Mendel, Inc. v. City of Anna, Texas*,
2022 WL 2700334 (E.D. Tex. June 9, 2022) .......... 1

*Morgan v. Cnty. of Yolo*,
436 F. Supp. 2d 1152 (E.D. Cal. 2006) .......... 12

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016) .......... 7

*MyMail, Ltd. v. OoVoo*, LLC,
613 F. Supp. 3d 1142 (N.D. Cal. 2020) .......... 13

*NantWorks, LLC v. Niantic, Inc.*,
No. 2024-2216, 2026 WL 1098161 (Fed. Cir. Apr. 23, 2026) .......... 12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) .......... 14, 18, 19

*OpenTV, Inc. v. Apple, Inc.*,
No. 14-CV-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) .......... 13

*PerformancePartners, LLC v. FlashParking, Inc.*,
697 F. Supp. 3d 678 (W.D. Tex. 2023) .......... 16

*RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017) ........ 12

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*, 673 F. Supp. 3d 1066 (N.D. Cal. 2023) ........ 12

*Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698 (Fed. Cir. 2023) ........ 4, 13

*SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161 (Fed. Cir. 2018) ........ 5, 13, 18

*Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353 (Fed. Cir. 2020) ........ 13

*SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa. 2016) ........ 16, 20

*Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023) ........ 7

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023) ........ 5, 15, 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, L.L.C.*, 874 F.3d 1329 (Fed. Cir. 2017) ........ 7, 18

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed.Cir.2014) ........ 13

*Warn Industries, Inc. v. Agency 6 Inc.*, 660 F.Supp.3d 924, (E.D. Cal. 2023) ........ 11

**Statutes**

35 U.S.C. § 101 ........ Passim

**Rules**

FED. R. CIV. P. 5 ........ 22

FED. R. CIV. P. 12(c) ........ Passim

Rule 12(b) ........ 12

Plaintiff Guardian Alliance Technologies, Inc. ("GAT"), respectfully renews its request for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101 as to its third and fourth causes of action for invalidity of claims 2–4 and 6–14 of the U.S. Patent No. 10,043,188 and all of the claims, 1–14, of its parent patent, U.S. Patent No. 9,070,098 (collectively, the "Remaining Claims"). *See* Dkt. No. 51, *First Amended Complaint*, pp. 42–43.[1]

## I. INTRODUCTION

On February 15, 2022, GAT filed a motion for judgment on the pleadings as to the invalidity of the '188 Patent in the United States District Court for the Eastern District of Texas ("Texas Action"). Granting that motion, the court in the Texas Action invalidated independent claims 1, 5, and 15 of the '188 Patent ("Invalidated Claims"). *See Miller Mendel, Inc. v. City of Anna, Texas*, 598 F. Supp. 3d 486 (E.D. Tex. 2022) ("Texas Invalidity Order"). However, in an order denying reconsideration, the Texas court clarified that claims 2–4 and 6–14 were not asserted by Defendant Miller Mendel, Inc. ("MMI"), and therefore, were outside its jurisdiction. *Miller Mendel, Inc. v. City of Anna, Texas*, No. 2:21-CV-00445-JRG, 2022 WL 2700334, at *1 (E.D. Tex. June 9, 2022), *aff'd*, 107 F.4th 1345 (Fed. Cir. 2024) ("Reconsideration Order").[2]

The Federal Circuit—in a published opinion—affirmed the invalidation of the Invalidated Claims on July 18, 2024, a copy of which is attached hereto as Exhibit 5. *See Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1348 (Fed. Cir.), *cert. denied*, 145 S. Ct. 593, 220 L. Ed. 2d 231 (2024) ("Federal Circuit Opinion"). MMI filed a petition for writ of certiorari to the Supreme Court of the United States, which was denied on November 25, 2024. *See Miller Mendel,*

---

[1] U.S. Patent Nos. 10,043,188 ("the '188 Patent") and 9,070,098 ("the '098 Patent") are attached hereto as Exhibits 1 and 2.

[2] The Texas court's order and its subsequent denial of reconsideration are attached hereto as Exhibits 3 and 4, respectively.

*Inc. v. City of Anna, Texas*, 145 S. Ct. 593, 220 L. Ed. 2d 231 (2024). Now, the invalidity of the Remaining Claims is before this Court. GAT requests that this Court finish the job started by the court in the Texas Action and hold the Remaining Claims to be invalid under 35 U.S.C. § 101.

Like the Invalidated Claims, the Remaining Claims fail the two-step patentability analysis provided by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014). First, the Remaining Claims are "directed to an abstract idea under *Alice* Step One—the abstract idea of performing a background check." *Texas Invalidity Order,* 598 F. Supp. 3d at 496. Second, the Remaining Claims fail Step Two because "none of the limitations add inventiveness to the abstract idea." *Texas Invalidity Order,* 598 F. Supp. 3d at 498. Indeed, the "lack of inventive concept is further confirmed by other parts of the specification, which describe no more than already available computers performing already available basic functions." *Federal Circuit Opinion,* 107 F.4th at 1354. Thus, the Remaining Claims are invalid under 35 U.S.C. § 101.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Remaining Claims are invalid under 35 U.S.C. § 101 for lack of patent-eligible subject matter.

## III. PROCEDURAL HISTORY

Through briefing on MMI's motion to dismiss (Dkt. 40), special anti-SLAPP motion to strike (Dkt. 41), and motion to transfer (Dkt. 54), the Parties have provided a thorough procedural history of this proceeding and the related proceedings in several other courts. This Court has already ascertained and elucidated that lengthy history. *See* Dkt. 48, pp. 2–4 (describing the background and procedural history); *see also* Dkt. 63.

Pertinent here, on August 21, 2025, GAT moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. 65). On September 4, 2025, MMI moved for leave to file an Amended

Answer and to modify the then-current scheduling order (Dkt. 68).[3] The Court held a hearing on the Parties' respective motions on November 24, 2025.[4] The Court granted MMI's motion for leave to file an Amended Answer and denied-as-moot GAT's 12(c) motion (Dkt. 77), though the Court anticipated the instant renewal of GAT's request for judgment on the pleadings. Ex. 6, *Nov. 24, 2025 Trans.*, pp. 25–26.

MMI's Amended Answer (Dkt. 86) added only the same improper and conclusory paragraph twice (differing only in patent designation), which states as follows:

> The ['098/'188] Patent claims recite, as a whole, specific technological methods for managing pre-employment background investigations that improve the functioning of computer-implemented processes in that field. The ordered combination of claim elements—including, inter alia, receiving and classifying applicant data, dynamically generating reference sets of electronic documents, transmitting electronic links, receiving electronic responses, and automatically generating suggested law-enforcement references based on applicant data—reflects an inventive concept that was not well-understood, routine, and conventional to those skilled in the art at the time of the invention. Under the standard articulated in *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), these claims, when considered as an ordered combination, amount to significantly more than an abstract idea and are therefore patent-eligible under § 101.

Dkt. 86, ECF pp. 14–15. MMI's conclusory statements are <u>directly contrary</u> to the findings of the Texas court and affirmance by the Federal Circuit. *Texas Invalidity Order,* 598 F. Supp. 3d at 496–99; *Federal Circuit Opinion,* 107 F.4th at 1353–54 ("[Representative] Claim 1 recites well-understood, routine, and conventional computer components"). MMI argued on appeal the exact same contention it now sets forth as purported fact. The Federal Circuit responded:

> We disagree. Indeed, the specification itself describes the invention as 'automat[ing] the majority of the tasks of a common pre-employment

---

[3] On August 28, 2025, MMI filed a petition for writ of mandamus before the Federal Circuit relating to this Court's determinations on the first-to-file rule and jurisdiction under the Declaratory Judgment Act. MMI's petition was denied on October 28, 2025.

[4] A copy of the certified transcript of the November 24, 2025 hearing are attached hereto as Exhibit 6.

> background investigation,' **thereby acknowledging that such tasks were routine prior to the date of the invention**.

*Id*. at 54 (emphasis added). Even without these binding determinations, this Court would not need to accept the additions to MMI's Amended Answer as true. *Sanderling Mgmt. Ltd. v. Snap Inc*., 65 F.4th 698, 706 (Fed. Cir. 2023) ("Sanderling's proposed amendment merely sought to add conclusory statements that the claimed steps were not well-known, routine, and conventional. The district court was not required to credit such conclusory allegations").

## IV. FACTUAL BACKGROUND

### A. Disclosures of the '098 and '188 Patents

The '098 Patent and the '188 Patent ("Patents-in-Suit") are both entitled "Background Investigation Management Service." The '098 Patent was issued on June 30, 2015. Ex. 2, *'098 Patent*, p. 1. Its child patent, the '188 Patent, was issued on August 7, 2018. Ex. 1, *'188 Patent*, p. 1. Defendant Tyler J. Miller is listed as the sole inventor of both of the Patents-in-Suit. *Id.*

Notably, the specifications of the Patents-in-Suit are **identical**. *Compare* Exs. 1–2. The specifications explain that the "subject matter relates to a system to facilitate the process of performing background applications on a plurality of applicants." Ex. 1, *'188 Patent*, at col. 1, lines 14-16; Ex. 2, *'098 Patent*, at col. 1, lines 14-16. In the "Background Information" of the Patents-in-Suit, the specifications note that:

> In many areas, but particularly in the area of law-enforcement pre-employment background investigations, investigators report they spend, on average, 40 hours per applicant investigation. During this process, the applicant typically completes ***a paper packet*** comprised of questions pertaining to the applicant's life history, including information on criminal activity, financial history, drug history, listing relatives and personal references, employment history, and many other in-depth personal questions … The investigator typically uses resources available to him or her to confirm the information the applicant provided in the various documents, to include, contacting past employers, supervisors, neighbors, relatives, references, landlords, etc., which makes up the bulk of the investigator's 40 hours per applicant of spent time.

> What has eluded the industry is an ***automated*** system to help a background investigator more efficiently and effectively conduct a background investigation.

Ex. 1 at col. 1, lines 20-40 (emphasis added); Ex. 2 at col. 1, lines 20-40. Describing the embodiment represented in FIG. 1 of the Patents-in-Suit, the specifications state that:

> software system **100** allows an organization **102** the ability to create and customize electronic documents **104** to be sent to applicants to complete via the software system **100**, and returned to the software system **100** in similar fashion. The software system 100 includes a document creation component **114** and a document management component **116**. The system **100** ***automates the majority of the tasks of a common pre-employment background investigation*** so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.

Ex. 1 at col. 4, lines 5-16 (emphasis added); Ex. 2 at col. 4, lines 1-11. Crucially, the Federal Circuit stated the following about the specification regarding *Alice* Step One:

> **The patent specification confirms that the asserted claims are directed to an abstract idea.** The '188 patent states that the problem addressed by the invention is "to help a background investigator more efficiently and effectively conduct a background investigation." '188 patent col. 1 ll. 38–40. It refers to the subject matter of the invention as "a web based software system for managing the process of performing pre-employment background investigations." *Id*. col. 3 l. 67 to col. 4 l. 2; *see also id*. Abstract. The specification characterizes the steps performed by the system as "automat[ing] the majority of the tasks of a common pre-employment background investigation so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations." *Id*. col. 4. ll. 12–16. **In short, the problem facing the inventor was the abstract idea of performing background investigations more efficiently and effectively, not an improvement to computer technology.**

*Federal Circuit Opinion,* 107 F.4th at 1352. (emphasis added). When analyzing under *Alice* Step Two, the Federal Circuit went on to say:

> **The lack of inventive concept is further confirmed by other parts of the specification**, which describe no more than "already available computers" performing "already available basic functions." *SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1169–70 (Fed. Cir. 2018); *see, e.g., Trinity*, 72 F.4th at 1367 (analyzing patent specification under *Alice/Mayo* step two). The '188 patent's use of generic computer components, such as a "computing device," "processors," "system memory," and "computer storage media," confirms that these components do not provide an inventive concept.

*Federal Circuit Opinion,* 107 F.4th at 1354. (emphasis added).

### B. The Remaining Claims

There are twenty-six (26) Remaining Claims between the Patents-in-Suit:

- ’098 Patent: Claims 1–14; and
- ’188 Patent: Claims 2–4 and 6–14.

For the convenience of the Court, attached as Exhibits 7–12 are side-by-side comparisons of the Remaining Claims having the same or similar claim elements. Like the court in the Texas Action chose to do, this Court may determine one or more claims to be representative of others. *See Texas Invalidity Order,* 598 F. Supp. 3d at 489, n. 2. Specifically, the court in the Texas Action, upon agreement of the parties, determined Invalidated Claim 1 to be representative of claims 5 and 15 of the ’188 patent. It is similarly representative of claim 9 of the ’188 Patent and independent claims 1, 5, and 9 of the ’098 Patent. *See* Exhibit 7.

Likewise, the dependent claims of the Patents-in-Suit uniformly add the same basic limitations—none of which are directed to anything other than fundamental steps of background checks, i.e., the gathering and organizing of information:

| Claims | Limitations |
|---|---|
| • ’098 Patent: Claims 2, 6, and 10<br>• ’188 Patent: Claims 2, 6, and 10 | Searching for a previous applicant entry from a different organization and sending that data. |
| • ’098 Patent: Claims 3, 7, and 11<br>• ’188 Patent: Claims 3, 7, and 11 | Presenting an option to modify the applicant documents before sending hyperlink. |
| • ’098 Patent: Claims 4, 8, and 12<br>• ’188 Patent: Claims 4, 8, and 12 | Defines questionnaires where next questions depend on prior responses. |
| • ’098 Patent: Claim 13<br>• ’188 Patent: Claim 13 | Creating multiple questionnaires classified by reference types. |
| • ’098 Patent: Claim 14<br>• ’188 Patent: Claim 14 | Allowing investigators to edit questionnaires. |

Analyzing a representative claim is proper when the claims are substantially similar and implicate the same issue under 35 U.S.C. § 101. *Entropic Commc'ns, LLC v. DISH Network Corp.*, 767 F. Supp. 3d 1043, 1057 (C.D. Cal. 2025); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed Cir. 2017); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). This is particularly true where, as here, the language of the claims is extremely similar. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) ("The only difference between the claims is the form in which they were drafted."). In fact, "[a] single claim may serve as representative for multiple asserted patents." *e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 574 (2020) (citing *Alice*, 573 U.S. at 212 n.1, 213 n.2, 134 S.Ct. 2347 and *Two-Way Media Ltd. v. Comcast Cable Commc'ns, L.L.C.*, 874 F.3d 1329, 1333 (Fed. Cir. 2017)). *See also Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1041 (N.D. Cal. 2023) ("In carrying out an *Alice* analysis, the district court need not address every claim of the patents-in-suit"); and *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (treating a single claim as representative for all asserted claims of the two patents at issue). Here, the Court may even select a representative claim from each of the groups of: (1) claims 2, 6, and 10 [*see* Ex. 8]; (2) claims 3, 7 and 11 [*see* Ex. 9]; (3) claims 4, 8, and 12 [*see* Ex. 10]; (4) claims 13 [*see* Ex. 11]; and (5) claims 14 [*see* Ex. 12] of the Patents-in-Suit.

Ultimately, regardless of whether the Court evaluates representative claims or each of the Remaining Claims individually, "[t]he [Patents-in-Suit] claim[] the well-known process of performing a background check." *Texas Invalidity Order,* 598 F. Supp. 3d at 499. "While the patent[s] inarguably 'turn[] much of a common pre-employment background investigation electronic,' such is not enough to make the abstract idea patent eligible. At the end of the day, it

remains a 'common pre-employment background investigation,' which is not eligible for patent protection." *Id.*

### C. Claim Constructions

MMI's primary argument for this Court to deny GAT's original 12(c) motion (Dkt. 65) (and allow the filing of MMI's Amended Answer) was that claim construction was necessary before the Remaining Claims could be determined to be invalid, despite claim construction not being necessary for the Invalidated Claims in the Texas Action. Specifically, MMI argued at the November 24, 2025 hearing that there are additional claim terms in the Remaining Claims that were not before the Texas court and required construction here. Ex. 6, *Nov. 24, 2025 Trans.*, p. 8 (providing four purported claim terms as examples: "interactive questionnaire," "predefined radius," "prior background investigation," and "prior residential address").

Pursuant to Scheduling Order (Dkt. 94), the Parties have since exchanged proposed terms for construction and proposed constructions for those terms. As illustrated in its construction briefing, GAT's position is that the claim terms of the Patents-in-Suit should be given their plain and ordinary meaning, and no construction is necessary. On the other hand, MMI's proposed constructions are as follows:

| Proposed Terms | MMI's Proposed Constructions |
|---|---|
| **Term Group I** | |
| "applicant entry" | "A system record associated with an applicant for a position with an organization, and the organization for whom the background check is intended to be performed." |
| "new applicant entry" | "An applicant entry that has not previously been stored in the system memory." |
| "previous applicant entry" | "An applicant entry previously stored in the system memory." |
| **Term Group II** | |

| | |
|---|---|
| "electronic documents" | "Documents stored, transmitted, or accessed in digital form by a computing device." |
| "applicant set of electronic documents" | "One or more electronic documents made available to the applicant." |
| "reference set of electronic documents" | "One or more electronic documents made available to the reference / reference source." |
| "first reference set of electronic documents" | Same as "reference set of electronic documents." |
| **Term Group III** | |
| "hyperlink" | "A reference to data that the reader can directly follow either by clicking or by hovering or that is followed automatically, which may be visually presented as a button or as text." |
| "applicant hyperlink" | "A hyperlink delivered to the applicant." |
| "reference hyperlink" | "A hyperlink delivered to the reference / reference source." |
| "first reference hyperlink" | Same as "reference hyperlink." |
| **Term Group IV** | |
| "program data" | "Data comprising information about one or more persons or organizations that may be useful to the system." |
| "first set of program data" | "A set of program data." |
| "second set of program data" | "A set of program data, distinct from the first set." |
| "reference set of program data" | "A set of program data regarding a reference source." |
| **Term Group V** | |
| "questionnaire" | "An electronic document that contains one or more questions." |
| "inter-active questionnaire" | "A questionnaire where the use or content of at least one question depends on the answer to one or more prior questions." |
| "classes of questionnaires" | "A grouping of questionnaires related by the type of intended respondent." |
| **Term Group VI** | |

| | |
|---|---|
| "reference" / "first reference" / "reference source" | "A person (including a person acting on behalf of an entity) invited to provide information regarding an applicant." |
| **Term Group VII** | |
| "reference class" / "type of reference" / "type of reference source" | "A category of reference/reference source, classified according to the relationship of the reference source to the applicant (e.g., relative, former employer, supervisor, co-worker, neighbor, personal reference, character reference), as identified by the applicant supplied program data." |
| "determining a reference class" | "Classifying the reference source by type according to the applicant-supplied program data about the reference source, where the classification governs the selection of class-specific electronic documents for transmission to that reference source." |
| "suggested reference list" | "A list of references suggested by the system, including one or more law enforcement agencies and/or courts." |
| "generating a suggested reference list" | "A computer-implemented operation that identifies, based on a distance threshold fixed in advance, the set of law enforcement agencies and/or courts whose locations fall within that distance threshold measured from the applicant's residential address." |

Notably, **<u>all but one</u>** "group" of MMI's seven "groups" of proposed claim terms for construction are present in the Invalidated Claims.[5] That single "group" comprises the terms "questionnaire," "inter-active questionnaire," and "classes of questionnaires." These claim terms, like those present in the Invalidated Claims, do not need construction, but even the constructions proposed by MMI do not change the § 101 analysis. Glaringly, MMI's proposed construction for "inter-active questionnaire" includes none of the optical-character-recognition-related pretext MMI's counsel proposed at the November 24, 2025 hearing to avoid judgment because none of

[5] MMI suggests that the terms "previous applicant entry" and "second set of program data" need construction. While these terms cannot be entirely found in the Invalidated Claims, the terms "applicant entry" and "set of program data" exist in all three Invalidated Claims 1, 5, and 15. The modifiers "previous" and "second" do not mandate separate construction.

that exists in the Patents-in-Suit. *Compare* Ex. 6, *Nov. 24, 2025 Trans.*, pp. 15–18 *with* Exs. 1–2. "[O]nly features that are claimed… can supply something beyond ineligible matter." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1061 (Fed. Cir. 2026).

Worse, of the three other examples MMI relied on at the November 24, 2025 hearing, MMI apparently never truly believed "predefined radius" needed to be construed because it is not in MMI's proposed terms for construction, while "prior background investigation" and "prior residential address" are not even claim terms existing anywhere in the Patents-in-Suit.[6] MMI's arguments at the November 24, 2025 hearing appear to have been nothing more than another delay tactic.

This Court has previously acknowledged the Federal Circuit's standard that "[c]laim construction is not required to resolve a motion based on § 101 eligibility." *Warn Industries, Inc. v. Agency 6 Inc.*, 660 F.Supp.3d 924, 931 (E.D. Cal. 2023) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Moreover, even if genuine claim construction disputes exist at the 12(c) stage, "a court may either 'proceed by adopting the non-moving party's constructions' or 'resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction.'" *Id* (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). Though unnecessary, all of the Remaining Claims are still invalid under § 101 even using MMI's proposed constructions because they still fail *Alice* steps one and two.

///

//

/

[6] In fact, "applicant past address" is a claim term within Invalidated Claim 15.

## V. ARGUMENT AND AUTHORITIES

### A. THE STANDARD FOR RULE 12(c) MOTIONS FOR JUDGMENT ON THE PLEADINGS TO INVALIDATE UNDER 35 U.S.C. § 101

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the opposing party's pleadings and operates like a motion to dismiss under Rule 12(b)(6)." *Samsung Elecs. Co. v. Blaze Mobile, Inc.*, 673 F. Supp. 3d 1066, 1071–72 (N.D. Cal. 2023) (citing *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006)). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are 'functionally identical.'" *Samsung*, 673 F. Supp. 3d at 1072 (quoting *Dworkin v. Hustler Mag*., Inc., 867 F.2d 1188, 1192 (9th Cir. 1989)). The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* Judgment on the pleadings is appropriate if, assuming the truth of all material facts pled in the complaint, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). In a patent case, the Federal Circuit reviews procedural aspects of motions for judgment on the pleadings using regional circuit law. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1325–26 (Fed. Cir. 2017).

Judgment on the pleadings under Rule 12(c) is appropriate when the claims-in-suit are directed to non-patentable subject matter. *See, e.g., NantWorks, LLC v. Niantic, Inc.*, No. 2024-2216, 2026 WL 1098161, at *5 (Fed. Cir. Apr. 23, 2026) (affirming grant of judgment on the pleadings under Fed. R. Civ. P. 12(c) on § 101 grounds where the patent claims were "directed to the abstract idea of 'providing information based on a location on a map.'"); *BuySAFE, Inc. v. Google Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Federal Circuit Opinion,* 107 F.4th at 1350–51. A court may decide the issue of § 101 validity on a Rule 12(c) motion even if there are factual

disputes, so long as it construes all allegations in favor of the non-moving party. *Samsung*, 673 F. Supp. 3d 1072 (granting 12(c) motion on declaratory judgment claim for invalidity; finding patent claims invalid under § 101); *see also SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *MyMail, Ltd. v. OoVoo*, LLC, 613 F. Supp. 3d 1142, 1149 (N.D. Cal. 2020) ("Accordingly, a district court may resolve the issue of patent eligibility under § 101 by way of a motion for judgment on the pleadings.") (citing *BuySAFE, Inc. v. Google, Inc*., 765 F.3d at 1352). *See also OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *2 (N.D. Cal. Apr. 6, 2015) ("In line with the Federal Circuit and several other courts in this district, the Court thus finds that this Motion can be resolved on the pleadings prior to formal claim construction.") (collecting cases).

The Court should not credit conclusory allegations by a patent owner, especially "conclusory statements that the claimed steps were not well-known, routine, and conventional." *Sanderling Mgmt. Ltd,* 65 F.4th at 706 ("No amendment to a complaint can alter what a patent itself states"); *Simio, LLC v. FlexSim Software Products, Inc*., 983 F.3d 1353, 1365 (Fed. Cir. 2020). The Federal Circuit has "repeatedly made clear that a conclusory assertion about an inventive concept, including by an expert, is insufficient." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1068 (Fed. Cir. 2026).

Additionally, the benefits of early resolution on a motion for judgment on the pleadings are certain:

> Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents. Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed.Cir.2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed.Cir.2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed.Cir.2014).

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364–65 (Fed. Cir. 2015) (Mayer, J., concurring). These benefits are particularly present here, where the subject matter of the Remaining Claims has already been determined to be patent ineligible.

**B. THE REMAINING CLAIMS ARE INVALID UNDER 35 U.S.C. § 101**

35 U.S.C. § 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception[:] 'Laws of nature, natural phenomena, and abstract ideas' are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70, 132 S. Ct. 1289, 1293 (2012) (quoting *Diamond v. Diehr*, 450 U.S. 175 (1981)).

To decide whether particular patent claims fall within the abstract-idea exception, a court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Alice*, 134 S.Ct. at 2355. If they are, the court must next "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 566 U.S. at 79, 78).

**(1) *Alice* Step One: Like the Invalidated Claims, the Remaining Claims are directed to the abstract idea of conducting background checks.**

"For software-based inventions, *Alice*/*Mayo* step one 'often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Federal Circuit Opinion,* 107 F.4th at 1352 (citing *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (cleaned up)).

Here, as described in the Background section of the Patents-in-Suit, *supra*, the purported advance over prior art systems is "an automated system to help a background investigator more

efficiently and effectively conduct a background investigation." Ex. 1, *'188 Patent*, col. 1, lines 39–40; Ex. 2, *'098 Patent*, col. 1, lines 38–39. Regarding the '188 Patent's claims, the Federal Circuit pointed out that "[t]he specification characterizes the steps performed by the system as 'automat[ing] the majority of the tasks of a common pre-employment background investigation so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.'" *Federal Circuit Opinion,* 107 F.4th at 1352–53 (quoting Ex. 1, col. 4. ll. 12–16).

Like the Invalidated Claims, the Remaining Claims are directed to automating background checks. *See* Ex. 1–2. The Remaining Claims "recite[] several steps that the computer system performs to assist the investigator with conducting a background investigation. Therefore, they are still directed to receiving, storing, transmitting, determining, selecting, and generating information, which place them in the 'familiar class of claims directed to a patent-ineligible concept.'" *Federal Circuit Opinion,* 107 F.4th at 1352 (quoting *Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1362 (Fed. Cir. 2023) (cleaned up) (finding "collecting information, analyzing it, and displaying certain results" abstract)); *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (finding "gathering, storing, and transmitting information" abstract).

The limitations of the dependent claims do not introduce any meaningful or substantive features that transform the underlying abstract idea into a patent-eligible invention. *See*, *infra*, Section IV(B). Specifically, Claims 2, 6, and 10 of the Patents-in-Suit add the limitation of checking to see if the applicant has previously applied to another organization. *See* Ex. 8. Claims 3, 7, and 11 of the Patents-in-Suit add the limitation of giving the investigator the option to modify one or more documents before transmitting them to the applicant. *See* Ex. 9. Claims 4, 8, and 12 of the Patents-in-Suit add the limitation of asking the applicant questions based on prior responses.

*See* Ex. 10. Claims 13 and 14 of the Patents-in-Suit add tailored questionnaires that the investigator may edit as part of the abstract background investigation process. *See* Exs. 11–12.

These claims "add no meaningful limitations beyond th[e] abstract idea" of background checking. *Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 641 (D. Del. 2018) (invalidating dependent claims as well); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis. This kind of narrowing … does not make the idea non-abstract for section 101 purposes."); and *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 683 (W.D. Tex. 2023) ("[Dependent claim] would also be invalid because it simply layers another feature" to the abstract idea). At the end of the day, each limitation of the Remaining Claims is still "directed toward automation of basic information gathering and organization." *Texas Invalidity Order,* 598 F. Supp. 3d at 494.

Notably, the court in the Texas Action found that "[t]he claims of the '188 Patent are structurally similar to those declared patent-ineligible in *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 256 (E.D. Pa. 2016), *aff'd*, 683 F. Appx 930 (Fed. Cir. 2017)." Specifically, the court in the Texas Action stated:

> The court in *SkillSurvey* found that the patent was "trying to achieve" the "abstract idea of reference checking job applicants" and that the "heart" of the patent was the "abstract idea of anonymously surveying prior employers within the context of job applications." (*Id.* at 255) (citations omitted). The court determined that the claims of the *SkillSurvey* patent, "alone and in combination, could all be completed by the human mind. A pen and paper version of the claimed method would not be particularly efficient, but it could be completed." (*Id.* at 256.) For the same reason as the claims at issue in *SkillSurvey*, the Court finds that the claims of the '188 Patent are directed to an abstract idea.

*Texas Invalidity Order,* 598 F. Supp. 3d at 495. *SkillSurvey* is still on all fours here: the Remaining Claims could all be completed by the human mind. While the use of "paper packets" for background investigations was not particularly efficient (e.g., taking up to 40 hours per applicant),

the background checks claimed by the Patents-in-Suit could be completed by hand and/or mere conversation. "[The Federal Circuit has] treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power*, 830 F. 3d at 1354. These subparts of conducting a background investigation—including questions based on answers to previous questions or questionnaires tailored for each position or person—are still fundamental components of background checking. Performing these steps through the use of a general purpose computer does not transform such an abstract process into patent eligible subject matter under 35 U.S.C. § 101.

All of the Remaining Claims fail Step One of the *Alice* analysis because they are directed to the abstract idea of background checking.

**(2) *Alice* Step Two: Like the Invalidated Claims, the Remaining Claims do not contain an inventive concept.**

The Remaining Claims fail *Alice* Step Two because they do not contain an inventive concept. To determine whether an inventive concept is present, courts look for "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Alice*, 134 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. at 1294). In other words, the question is whether the claims "contain additional elements that 'transform the nature of the claim into a patent-eligible application.'" *Federal Circuit Opinion,* 107 F.4th at 1353 (quoting *Alice*, 573 U.S. at 217). As in *Alice*, "[t]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea […] on a generic computer." The Federal Circuit has acknowledged that "few of [its] cases have involved a determination favoring the patent owner at step two after a determination favoring the challenger at step one." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1067 (Fed. Cir. 2026).

Analyzing Representative Claim 1 of the '188 Patent under *Alice* Step Two, the Federal Circuit found no inventive concept, but mere use of a generic computer to implement the abstract idea of background checks:

> Here, when viewing the limitations of representative claim 1 individually or as an ordered combination, **the limitations "merely recite well-understood, routine, conventional activities, either by requiring conventional computer activities or routine data-gathering steps."** *OIP Techs., Inc. v. Amazon.com*, Inc., 788 F.3d 1359, 1363 (Fed. Cir. 2015) (cleaned up).
>
> Claim 1 recites well-understood, routine, and conventional computer components. Claim 1 recites a method performed by a "computing device with a processor and a system memory." '188 patent col. 15 l. 52–53. None of the limitations recited in the claim "requires anything other than conventional computer and network components operating according to their ordinary function." *Two-Way Media*, 874 F.3d at 1339; '188 patent col. 15 l. 52 to col. 16 l. 19. Nor is the ordered combination of these steps inventive. For example, the patent specification explains that "it should be appreciated that these steps may be performed *in any random order* and the process 800 *is not defined by this particular illustrative order*." '188 patent col. 14 ll. 21–24 (emphases added). Considered individually or as an ordered combination, the claim limitations fail to transform the claimed abstract idea into a patent-eligible application.
>
> The lack of inventive concept is further confirmed by other parts of the specification, which describe no more than "already available computers" performing "already available basic functions." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169–70 (Fed. Cir. 2018); *see, e.g., Trinity*, 72 F.4th at 1367 (analyzing patent specification under *Alice*/*Mayo* step two). **The '188 patent's use of generic computer components, such as a "computing device," "processors," "system memory," and "computer storage media," confirms that these components do not provide an inventive concept**. '188 patent col. 12 ll. 46–50, col. 13 ll. 40–41; *see Trinity*, 72 F.4th at 1367. For example, the specification teaches one embodiment with "a very basic configuration 701, [where] computing device 700 typically includes one or more processors 710 and system memory 720." '188 patent col. 12 ll. 46–48. The specification further states that "the system memory 720 can be of any type" and that "[a]ny such computer storage media can be part of device 700." Id. col. 12. ll. 64–65, col. 13 ll. 40–41 (emphases added).

*Federal Circuit Opinion,* 107 F.4th at 1353–54 (emphasis added). The Remaining Claims fail *Alice* Step Two for the exact same reasons. None adds anything beyond the abstract idea of background checks or requires anything other than conventional computer components, as stated in the specifications. *See* Ex. 1, *'188 Patent*, col. 15, lines 52–53; Ex. 2, *'098 Patent*, col. 15, lines

54–55. The addition of claim terms such as "computer-implemented" and "using a computer" is not enough to confer patent eligibility:

> [T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea "while adding the words 'apply it'" is not enough for patent eligibility. . .. Stating an abstract idea while adding the words "apply it with a computer" simply combines those two steps, with the same deficient result. Thus, if a patent's recitation of a computer amounts to a mere instruction to "implemen[t]" an abstract idea "on . . . a computer," that addition cannot impart patent eligibility.

*Alice*, 134 S. Ct. at 2358 (citations omitted); s*ee also Bascom Research, LLC v. LinkedIn, Inc.*, Case No. 12-CV-06293-SI, 2015 WL 149480, at *3, *9-10 (N.D. Cal. Jan. 5, 2015) (holding that while the patentee overcame § 101 rejections "by adding the words 'computer-implemented' into the claims" during the process of obtaining the patent, the "generic computer implementation" language from *Alice* dictated that the patent was invalid as being directed to ineligible subject matter under Section 101).

All of the elements of the Remaining Claims, which, according to the specifications, are undertaken to help a background investigator more efficiently and effectively conduct a background investigation, are "manual tasks" that "cannot be rendered patent-eligible merely by performing them with a computer." *Apple*, 842 F.3d at 1244; *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). The mere recitation of using a computer to perform the steps of a background investigation does not "salvage an otherwise patent-ineligible process." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). In addition to the independent Remaining Claims, the limitations of the dependent claims are more of the same—using computers to collect and organize information, i.e., perform a background check. *See*, *infra*, Section IV(B).

Ultimately, as the courts in *SkillSurvey* and the Texas Action held, and the Federal Circuit affirmed, patents claiming the collection and organization of information related to job applications and background checks are directed to an abstract idea. *See Texas Invalidity Order,* 598 F. Supp. 3d at 498; *SkillSurvey*, 178 F. Supp. at 255-57. Therefore, they are invalid absent a transforming additional element. *Id*. Conducting job applicant reference checks is a mental process that is merely a time-honored, longstanding commercial practice and method of organizing human activity. Conducting these checks with a computer is not patentably inventive. *Federal Circuit Opinion,* 107 F.4th at 1353–54. Thus, the Remaining Claims fail *Alice* Steps One and Two and are invalid.

## **CONCLUSION**

For any or all of the above reasons, the Court should grant GAT's Renewed Motion for Judgment on the Pleadings and hold the Remaining Claims invalid under 35 U.S.C. § 101.

Dated: July 29, 2026

BOUTIN JONES INC.
Attorneys at Law

Robert D. Swanson
Daniel S. Stouder

and

DUNLAP CODDING PC
Attorneys at Law
Douglas J. Sorocco

and

RYAN WHALEY PLLC
Attorneys at Law

by: */s/ Evan Talley*
Evan W. Talley

Attorneys for Plaintiff
Guardian Alliance Technologies, Inc.

CASE: *Guardian Alliance Technologies v. Miller Mendel, et al.*

CASE NO. USDC Eastern District of California Case No. 2:22-CV-01390-WBS-AC

**CERTIFICATE OF SERVICE**

I am over the age of eighteen years and not a party to the foregoing action.

On July 29, 2026, I served the within:

| | |
|---|---|
| | **by mail** on all parties in said action by regular, first class United States mail, postage fully pre-paid, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. |
| | **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below. |
| | **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c). |
| X | **by electronic filing with the Clerk of the Court using the CM/ECF System** in accordance with F.R.C.P 5(b)(2)(D) and the above Court's Local Rules, I electronically filed the foregoing with the Clerk of the Court for the United States District Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. |
| | **on non-CM/ECF participants** in accordance with F.R.C.P 5 and the above Court's Local Rules and pursuant to the above Court's Notice of Electronic filing some of the participants in the case are not CM/ECF users and must be served using conventional means. Therefore, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, to the following non-CM/ECF participants by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At Boutin Jones Inc., mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on July 29, 2026.

____*/s/ Evan W. Talley*____________
Evan W. Talley