**RYLANDER & ASSOCIATES PC**
KURT M. RYLANDER, admitted *pro hac vice*
E-Mail: rylander@rylanderlaw.com
P.O. Box 250
Vancouver, WA 98666
Telephone: 360.750.9931

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOHN S. POULOS, SB# 154689
E-Mail: John.Poulos@lewisbrisbois.com
CAITLIN E. HIGGINS, SB# 298792
E-Mail: Caitlin.Higgins@lewisbrisbois.com
2485 Natomas Park Drive, Suite 450
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

LAWRENCE R. LAPORTE, SB# 130003
E-Mail: Lawrence.LaPorte@lewisbrisbois.com
CHARLES KERTELL, SB# 181214
E-Mail: Charles.Kertell@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants,
MILLER MENDEL, INC. and TYLER MILLER

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation,

Plaintiff,

vs.

MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual,

Defendants.

Case No. 2:22-CV-01390-WBS-AC

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Hon. William B. Shubb

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. DISCUSSION ........ 2

A. This Court Lacks Subject Matter Jurisdiction Over The Invalidity Counts ........ 2

B. Guardian Improperly Attempts To Contradict Facts In Defendants' Answer ........ 3

C. Guardian Repeatedly Relies On Factual/Legal Inaccuracies And Assumptions ........ 5

1. The Federal Circuit Limited Its Opinion To Three Patent Claims ........ 5

2. The Federal Circuit Provided No Claim Constructions ........ 6

3. Claim 1 Of The '188 Patent Fails To Represent Any Current Claim ........ 7

4. Guardian Conceded The Independent Claims Differ Between Patents ........ 7

5. The Dependent Claims Add Meaningful/Substantive Limitations ........ 8

6. Guardian's Motion Does Not Avoid Full Claim Construction ........ 10

D. Guardian Contradicts Its Own Invalidity Contentions ........ 12

E. Guardian Tactically Chose To Ignore Discovery ........ 13

F. Guardian Never Explains Its Position ........ 14

G. Even If The Court Reaches The Merits, Guardian Cannot Show The Remaining Claims Are Ineligible As A Matter Of Law ........ 15

1. The *Alice* Two-Step Governing Standard ........ 16

2. Step One – The Remaining Claims Are Directed to Specific Technological Operations, Not the Abstract Idea of "Performing a Background Check" ........ 17

3. Guardian Offers None of the Recognized Forms Of Support For A Finding That The Claimed Elements Were Well-Understood, Routine, And Conventional ........ 19

4. Key Limitations Of Claims In The '098 Patent And '188 Patent Were Not Widely Prevalent Or In Common Use In The Background Investigation Industry ........ 21

5. Step Two – At a Minimum, the Ordered Combination Supplies an Inventive Concept, and Conventionality Is a Disputed Fact That Cannot Be Resolved On the Pleadings ........ 22

6. The Dependent Claims Independently Require Denial ....26

III. CONCLUSION ....27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) .......... 5, 16, 23, 26

*AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239 (Fed. Cir. 2001) .......... 7

*Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208 (2014) .......... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) .......... 18, 24, 26

*Amgen Inc. v. Sanofi*, 598 U.S. 594 (2023) .......... 12

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) .......... 16

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) .......... 18, 23, 24

*Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) .......... 2

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .......... *passim*

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) .......... 27

*CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020) .......... 18

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) .......... 23

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) .......... 25

*Diamond v. Diehr*, 450 U.S. 175 (1981) .......... 17, 24

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .......... 25

*Electronic Communication Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) .......... 25

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .......... 16, 17, 18

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) .......... 7

*Fox Group, Inc. v. Cree, Inc.*,
700 F.3d 1300 (Fed. Cir. 2012) .......... 2

*Kaavo Inc. v. Amazon.com Inc.*,
323 F. Supp. 3d 630 (D. Del. 2018) .......... 27

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) .......... 3

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) .......... 16, 17, 18, 26

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 2

*Microsoft Corp. v. Enfish, LLC*,
662 F. App'x 981 (Fed. Cir. 2016) .......... 17

*Microsoft Corp. v. i4i Limited Partnership*,
564 U.S. 91 (2011) .......... 4

*Miller Mendel, Inc. v. City of Anna, Texas*,
107 F.4th 1345 (Fed. Cir. 2024) .......... *passim*

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) .......... 13

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .......... 6

*Parkcrest Builders, LLC v. Hous. Auth. of New Orleans (Hano)*,
2017 WL 6388511 (E.D. La., Dec. 14, 2017) .......... 14

*Preiser v. Newkirk*,
422 U.S. 395 (1975) .......... 2

*QuickLogic Corp. v. Konda Technologies, Inc.*,
2023 WL 5182598 (N.D. Cal., Aug. 11, 2023) .......... 3

*Rapid Litig. Mgmt. v. CellzDirect, Inc.*,
827 F.3d 1042 (Fed. Cir. 2016) ........ 24

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........ 17

*Samsung Electronics Co. v. Blaze Mobile, Inc.*,
673 F. Supp. 3d 1066 (N.D. Cal. 2023) ........ 23

*Sanderling Management, Ltd. v. Snap, Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ........ 5, 10

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ........ 18

*SkillSurvey, Inc. v. Checkster LLC*,
178 F. Supp. 3d 247 (E.D. Pa. 2016) ........ 25

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
665 F.3d 1269 (Fed. Cir. 2012) ........ 2

*Warn Indus., Inc. v. Agency 6, Inc.*,
660 F. Supp. 3d 924 (E.D. Cal. 2023) (Shubb, J.) ........ 15, 18

**Federal Statutes**

35 U.S.C. 112(a) ........ 12

35 U.S.C.
§ 101 ........ *passim*
§§ 102, 103, 112 ........ 12
§ 112(a) ........ 12
§ 112(b) ........ 13
§ 282 ........ 4

**Other Authorities**

*Berkheimer Memorandum,* § II ........ 12

*Berkheimer Memorandum* § III(A)(1) ........ 19

*Berkheimer Memorandum* § III(A)(3) ........ 20

Fed. R. Civ. P. 12(d), and MMI ........ 26

Fed. R. Civ. P. 12(h)(3) ........ 2

IPR Petition, Dkt. 107-6 ........ 9

MPEP ........ 17, 25

MPEP § 2106.05(d)(I) ........ 16, 21
MPEP § 2106.05(d)(I)(1) ........ 17
MPEP § 2106.05(d)(I)(2) ........ 12, 19, 20
MPEP § 2106.05(d)(I)(3) ........ 24
MPEP § 2106.05(d)(II) ........ 25
MPEP § 2106.05(d)(II)(i) ........ 26
Rule 12(c) ........ 15, 23
Rule 56—Guardian ........ 26
Rule 56(d) ........ 26
U.S. Patent Nos. 9,070,098 ........ *passim*

## I. INTRODUCTION

Plaintiff Guardian Alliance Technology, Inc.'s renewed motion for judgment on the pleadings (Dkt. 105) is both procedurally defective and substantively deficient. Guardian lacks continuing subject matter jurisdiction and improperly attempts to contradict factual allegations in defendants Miller Mendel, Inc. and Tyler Miller's operative Answer. Guardian also repeatedly: (1) overstates the scope and content of the Federal Circuit's 2024 opinion from a different case (directed to different patent claims); (2) fails to support its highly conclusory (and inaccurate) assertions that conveniently dismiss the numerous substantive differences between the claims of U.S. Patent Nos. 9,070,098 and 10,043,188 (as well as the substantial differences between the independent and much narrower dependent claims); and (3) ignores this Court must conduct a full claim construction (especially when Guardian wrongly asserts all claim terms should be accorded their "plain and ordinary" meaning – and does so without specifying those purported meanings). Indeed, Guardian through the present motion (filed more than seven months after the pleadings closed, and without prior notice) not only directly contradicts both its own February 2026 invalidity contentions (which assert the patent claims are neither enabled nor sufficiently definite for a person having ordinary skill in the art to understand) and its own prior claim construction submissions (including to the U.S. Patent Trial and Appeal Board), it seeks judgment on the pleadings for non-patentable subject matter (35 U.S.C. §101) after inexplicably refusing to respond to Defendants' interrogatory on that very subject.

Even ignoring the above deficiencies (many of which independently require denial of the present motion), Guardian still fails to satisfy the two-step *Alice/Mayo* framework (for any patent claim, let alone all claims). For example, with respect to step one, Guardian violates Federal Circuit precedent by trying to describe the claims using the highest level of abstraction it believes possible – untethered from the language of the individual claims and the governing law. And, with respect to step two, Guadian fails to establish (let alone as a matter of law) the patent claim limitations (individually or as an ordered combination) involve no more than performance of well-understood, routine, and conventional activities previously known to the industry in April 2011. Indeed, the expert declaration of David Howell, submitted herewith, establishes otherwise.

# II. DISCUSSION

## A. This Court Lacks Subject Matter Jurisdiction Over The Invalidity Counts

This Court lacks subject matter jurisdiction over Guardian's Declaratory Judgment Counts III & IV (seeking to invalidate all claims of the '098 patent, as well as all remaining claims of the '188 patent) – rendering the present motion moot. A federal court has no authority to issue a declaratory judgment unless an "actual controversy" exists between the parties at all stages of review (including the present time), not merely at the time the Complaint is filed. *See*, *e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (requiring a "substantial controversy" of "sufficient immediacy and reality"); *Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344-49 (Fed. Cir. 2007) (plaintiff bears burden to establish continuing jurisdiction; where controversy dissipates, count must be dismissed); Fed. R. Civ. P. 12(h)(3). Moreover, the existence of any case or controversy must be evaluated on a claim-by-claim basis for each patent (and not on a patent-by-patent basis). *See*, *e.g., Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1307 (Fed. Cir. 2012); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1283–84 (Fed. Cir. 2012).

Here, Defendants have never accused Guardian (or anyone associated with Guardian) of infringing any '098 patent claims.[1] Nor have Defendants ever filed suit against any of these individuals/entities expressly asserting infringement of any of the remaining claims of the '188 patent.[2] In fact, Defendants effectively dismissed the infringement claims in the Oklahoma action in May 2025 (before transfer to this Court; with only claims 1, 5, and 15 of the '188 patent ever

---

[1] Guardian cites an October 2017 letter in the operative Complaint. *See*, Oklahoma Dkt. 51-18. However, that letter never accuses Guardian of infringement (and expressly seeks assurances that Guardian does not infringe), and never identifies a specific patent claim. Even more telling, the letter was sent almost nine years ago – and Defendants have never filed suit against anyone for infringement of any claim of the '098 patent.

[2] *See Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1354-56 (Fed. Cir. 2024) (only claims 1, 5, and 15 of the '188 patent asserted; court lacked subject matter jurisdiction over other patent claims); *Miller Mendel, Inc. v. Washington County, Oregon*, District of Oregon Case No. 3:21-cv-00168 at Dkt. 33 (January 2, 2025 Order of Dismissal confirming only claims 1, 5, and 15 of the '188 patent asserted); *Miller Mendel, Inc. v. Alaska State Troopers*, District of Alaska Case No. 3:21-cv-00129 at Dkts. 20, 50 (July 2, 2021 Amended Complaint and January 2, 2025 Order of Dismissal confirming only claims 1, 5, and 15 of the '188 patent expressly asserted).

asserted).[3] *See* Western District of Oklahoma Case No. 5:18-cv-00990 at Dkt. 148 (finding all parties agreed no patent infringement action can be pursued against the City of Oklahoma City). *See also*, *e.g.*, *QuickLogic Corp. v. Konda Technologies, Inc.*, 2023 WL 5182598, at *5 (N.D. Cal., Aug. 11, 2023) (declaratory judgment claims for non-infringement found moot after infringement claims dismissed). Moreover, the entire '188 patent has now expired (as of August 7, 2026) for nonpayment of maintenance fees. (Rylander ¶4 & Exh. C). Thus, there is no present, actual case or controversy between Defendants and Guardian with respect to the validity of the claims of the '098 patent or the remaining claims of the '188 patent.[4]

**B. Guardian Improperly Attempts To Contradict Facts In Defendants' Answer**

Courts have developed a two-step framework to analyze patent claim eligibility under 35 U.S.C. §101. Step one requires a determination whether the claim is directed to an unpatentable law of nature, natural phenomenon, or abstract idea. And, only if the claim is found directed to a patent-ineligible concept, step two requires a determination whether any additional elements in the claim (individually or as an ordered combination) supply an inventive concept. *Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Services v. Prometheus*

---

[3] Defendants also dismissed all other suits – which were similarly limited to claims 1, 5, and 15 of the '188 patent – after those claims were invalidated by the Federal Circuit; and Defendants have not filed or threatened to file any other suits since that time.

[4] While this Court addressed standing in an April 30, 2025 Order (Dkt. 48, pp. 7-8), it is required to continually evaluate subject matter jurisdiction (especially after more than a year has passed, including what effectively amounts to a dismissal with prejudice of all infringement claims in the Oklahoma litigation and the lapsing of the '188 patent). Defendants also respectfully submit the April 2025 Order did not address subject matter jurisdiction on a claim-by-claim basis (nor does Guardian's First Amended Complaint at Dkt. 51, ¶¶150, 155). Further, Defendants are unaware of any precedent that supports a finding of subject matter jurisdiction merely because two patents are "closely related" (or because a letter was sent <u>almost nine years ago</u> that, in fact, merely asked Guardian to confirm that it was not infringing any intellectual property right).

Additionally, while Guardian may try to assert the validity of these patent claims is relevant to its *Handgards* antitrust count, none of the claims of the '098 patent (and none of the remaining claims of the '188 patent) were ever asserted in a patent infringement suit against Guardian or any other individual/entity. Therefore, they cannot possibly be the subject of a *Handgards* count. That count has also been reserved for Phase II, and could be decided by summary judgment in Phase II without addressing validity. A *Handgards* count also requires a showing (among other things) that Defendants knew the patent claims were invalid (despite the statutory presumption of validity) when they sued for patent infringement – not that they were found invalid years later.

*Labs., Inc.*, 566 U.S. 66, 72-73 (2012). While the *Alice* two-step framework will be addressed in further detail below, it is critical to understand that (under the second step): (1) the additional elements constitute patentable subject matter when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry, and (2) the question of whether a claim element (or a combination of elements) was "well-understood, routine, ***and*** conventional to a skilled artisan in the relevant field [at the time of the invention] is a question of fact."[5] *See*, *e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018) (emphasis added).

Defendants filed an Amended Answer on December 16, 2025. *See* Dkt. 86. Defendants therein expressly pled that the claims of the '098 and '188 patents each recited (as a whole) specific technological methods for managing pre-employment background investigations that improve the functioning of computer-implemented processes in that field. Defendants also expressly pled that, in each instance, the ordered combination of these claim elements – including, *inter alia*, receiving and classifying applicant data, dynamically generating reference sets of electronic documents, transmitting electronic links, receiving electronic responses, and automatically generating suggested law-enforcement references based on applicant data – reflects an inventive concept that was not well-understood, routine, and conventional to those skilled in the art at the time of the invention (*i.e.*, April 6, 2011). And, as such, the claims are patent-eligible under 35 U.S.C. §101.[6] *See* Dkt. 86, ¶¶149, 154.

---

[5] Indeed, because patent claims are presumed valid (35 U.S.C. §282), Guardian will bear the burden to present clear and convincing evidence of invalidity. *See*, *e.g.*, *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 95 (2011). Moreover, while an improvement to computer technology is sufficient under *Alice*, it is not required.

[6] As discussed in detail below, Guardian's argument that these allegations are "directly contrary to the findings of the Texas court and affirmance by the Federal Circuit" (emphasis included) is woefully inaccurate, and represents a fundamental misunderstanding of the facts and law. Not only did the Federal Circuit strictly restrict its decision to claims 1, 5, and 15 of the '188 patent (not any of the claims currently at issue), but its decision was also strictly limited to the factual record it was provided. For example, the Federal Circuit never ruled (because it could not) that Defendants were barred from later introducing evidence in another case that other patent claims contain one or more limitations that involve more than the performance of well-understood, routine, and conventional activities previously known to the industry.

The present motion for judgment on the pleadings, which attempts to contradict these factual allegations from Defendants' Amended Answer, is thus fatally flawed. *See*, *e.g.*, *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Contrary to Guardian's unsupported assertion, Defendants' Answer is not conclusory. *See*, *e.g.*, Dkt. 77 (finding the record before the Court does not unequivocally suggest Defendants' allegations are futile because, if accepted as true, they could plausibly establish that the claimed combination contains inventive components and improves the workings of the computer). In fact, Guardian fails to cite even a single case where such a specific allegation was found to be conclusory.[7]

In contrast, Defendants properly pled (supported by technical declarations) that limitations of the '188 and '098 patents were not well-understood, routine, and conventional to a skilled artisan in the relevant industry at the time of the invention. (*See* Dkts 68-1; 68-2; 86 at ¶¶149, 154). Guardian has failed to refute those allegations or declarations. Further, Guardian has not disputed Mr. Howell's qualifications or his opinions on who constituted a person having ordinary skill in the art ("PHOSITA") on April 6, 2011. Guardian's mere attorney argument fails to rebut these well-pled, supported allegations.

### C. Guardian Repeatedly Relies On Factual/Legal Inaccuracies And Assumptions

Even ignoring the lack of subject matter jurisdiction and impermissible attempt to contradict factual allegations in the Amended Answer (either of which should independently end the inquiry and require the denial of Guardian's motion), Guardian relies on a series of factual and legal inaccuracies, as well as false assumptions. Several are addressed below.

#### 1. The Federal Circuit Limited Its Opinion To Three Patent Claims

Guardian's entire motion is based on the inaccurate assumption that Federal Circuit's decision in the Anna, Texas case has preclusive effect beyond the three patent claims that were at

[7] Guardian's reliance on *Sanderling Management, Ltd. v. Snap, Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023) is misplaced. In *Sanderling*, the patentee had not proposed any claim constructions or identified any specific factual disputes. Nor had the patentee requested leave to amend its Complaint until the hearing on the motion to dismiss. Moreover, the appellate court found the proposed amendment futile (*i.e.*, any discussion of purported "conclusory statements," none of which are ever mentioned, let alone discussed, in the opinion are *dicta*).

issue in that case (*i.e.*, claims 1, 5, and 15 of the '188 patent). The Federal Circuit's opinion is clear that the court did not have jurisdiction over any other claims. *Miller Mendel*, 107 F.4th at 1354-56. The Federal Circuit also expressly stated that its decision was based, at least in part, on Miller Mendel's failure to identify any specific facts in the record that would change the Court's analysis (*e.g.*, facts showing that one or more limitations involved more than the performance of well-understood, routine, and conventional activities previously known to the industry). *Id.* at 1354. Guardian thus presents no authority for the proposition that Defendants cannot now introduce such evidence (or make other arguments) directed to other patent claims.[8]

### 2. The Federal Circuit Provided No Claim Constructions

Guardian's entire motion is also based on the inaccurate assumption that the Federal Circuit construed one or more claim terms in the Anna, Texas case. In fact, Guardian suggests (nonsensically) that the Court, at most, need only construe claim terms that do not appear in claim 1 of the '188 patent. *See* Motion, p. 10:16-17. However, no constructions appear in either the district court or Federal Circuit record. This includes any assertion by Guardian that the Federal Circuit found their "plain and ordinary meanings" should apply. Moreover, even assuming *arguendo* any such determination was made (which it was not), neither the Federal Circuit nor the district court provided any such plain and ordinary meanings (which are not necessarily dictionary definitions or how a lay juror would understand those terms, but how a PHOSITA at the time of the invention would have understood the claim term after reading the specification, claims, and prosecution history). This is critical because, even if a claim term is given its "plain and ordinary meaning," the parties may dispute that meaning and any such material conflicts must be resolved by the Court. *See*, *e.g.*, *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008) (a determination that a claim term has its "plain and ordinary

[8] Guardian's slogan that this Court should "finish the job started by the court in the Texas Action" exemplifies Guardian's fundamental misunderstanding of the Federal Circuit decision and its effect. The Federal Circuit expressly stated that it did not have jurisdiction over any other claims than the three before it and that its determination was based on the limited record before the court. The Federal Circuit never held (because it could not) that Defendants were precluded in the future from introducing argument and additional evidence with respect to other patent claims.

meaning" may be inadequate if the term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute; district courts are not required to construe every limitation present in the asserted claims, but "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it").[9]

**3. Claim 1 Of The '188 Patent Fails To Represent Any Current Claim**

Guardian further incorrectly assumes that Defendants must agree to designate one or more "representative" claims for purposes of 35 U.S.C. §101. Invalidated claim 1 of the '188 patent is not representative of any of the patent claims currently at issue; and each and every one of those claims must be individually evaluated on its own merits. This is especially true of the independent claims of the '098 patent, as well as the dependent claims in both patents. Indeed, Defendants respectfully submit that any finding by this Court that claim 1 of the '188 patent is representative of those claims (as Guardian suggests, at Motion, p. 6:11-12) would be reversible error – including because Guardian has not presented any substantive argument why claim 1 of the '188 patent is representative and Defendants herein present meaningful arguments for the distinctive significance of claim limitations not found in claim 1 of the '188 patent.

**4. Guardian Conceded The Independent Claims Differ Between Patents**

Guardian wants this Court to mistakenly believe there are no differences between claims 1, 5, and 15 of the '188 patent and the independent claims of the '098 patent. Not so. Even a cursory review yields numerous differences (including use of several different claim terms). Most notably, Guardian (contrary to its position for the present motion) expressly argues in its claim construction brief (filed the same day) that the last few limitations of the independent claims in the '098 patent

---

[9] Importantly, allowing the jury to determine the "plain and ordinary meaning" in such circumstances is reversible error. *See*, *e.g.*, *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318-20 (Fed. Cir. 2016) (district court committed "legal error" when it "instruct[ed] the jury that the claims should be given their plain and ordinary meaning" while leaving the "question of claim scope unanswered, leaving it for the jury to decide;" emphasizing that "simply rejecting one proposed construction does not mean that a general jury instruction to give terms their plain and ordinary meaning resolves the relevant dispute"); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("It is critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial").

are substantively different (and much narrower in scope) than the last limitation of the independent claims in the '188 patent.[10] *See* Dkt. 104, pp. 30-33 ("The Court should avoid importing those limitations across claims and patents where the patentee chose different words. Indeed, MMI's proposed construction would erase those claim-by-claim differences and improperly narrow claims that omit that limitation;" "each claim states its own metes and bounds, and the 'pre-defined radius' limitation applies where, and only where, a claim recites it."). Guardian cannot have it both ways (*e.g.*, Guardian wants to take one position for purposes of the present motion but, if its motion is denied, Guardian wants the ability to take a contrary position for purposes of claim construction). This tactical gamesmanship – which is constantly repeated by Guardian throughout its motion – and should not be countenanced.[11]

**5. The Dependent Claims Add Meaningful/Substantive Limitations**

Guardian also wants this Court to completely ignore that the dependent claims of both patents add meaningful, substantive limitations that must be considered in any 35 U.S.C. §101 analysis.[12] For example, claim 2 of the '098 patent recites specific, additional steps concerning a novel search for previous applicant entries in the system memory associated with the applicant and a different organization for a previous position – a process that is more than mere automation of

---

[10] Specifically, claim 1 of the '098 patent requires "obtaining an applicant residential address from the applicant electronic response; generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator," whereas claim 1 of the '188 patent required "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address."

[11] Other examples abound where Guardian (unlike its position here) has failed to admit in its claim construction brief that different claim language in the two patents have the same meaning. (*See* Dkt. 104, pp. 17-18, 21-22, 28-29 (*e.g.*, Guardian failing to admit the terms "reference," "first reference," and "reference source" have the same meaning; Guardian failing to admit that "reference set of electronic documents" and "first reference set of electronic documents" have the same meaning; Guardian failing to admit that "reference hyperlink" and "first reference hyperlink" have the same meaning; Guardian failing to admit that "type of reference" and "type of reference source" have the same meaning)).

[12] Guardian asserts in a highly-conclusory manner, with absolutely no factual or legal support, that the dependent claims "add the same basic limitations – none of which are directed to anything other than fundamental steps of background checks…" (*See* Motion, p. 6:14-16).

common pre-employment background investigations (*e.g.*, it requires computer memory shared between organizations with information stored in a specific hierarchical structure). But, Defendants need not even establish that fact here. Instead, Guardian faces the impossible task of proving otherwise as a matter of law based solely on the pleadings. Guardian also never addresses the parties' disagreements about (among other things) the constructions of the claim terms "applicant entry," "new applicant entry," "previous applicant entry," and "program data" (with Guardian advocating much broader constructions in the present action that directly conflict with positions it previously advanced before the U.S. Patent and Trademark Office and in the Oklahoma action).[13]

As another example, dependent claim 4 of the '098 patent recites a method wherein one document of the applicant set of electronic documents is an inter-active-questionnaire. This is again more than mere automation of common pre-employment background investigations (or, at a very minimum, raises questions of fact). Guardian also never addresses the parties' disagreements about (among other things) the construction of the claim terms "electronic documents," "questionnaires," and "inter-active questionnaires."[14]

As a third example, dependent claim 3 of the '098 patent recites a method where, prior to

---

[13] For example, unlike here, Guardian in its unsuccessful *inter partes* review (IPR) proceeding attempting to invalidate certain claims of the '188 patent argued that "program data" (and several other claim terms) should not be given their "plain and ordinary meaning." (*Compare* IPR Petition, Dkt. 107-6, pp. 13-18 *with* Guardian Claim Construction Brief, Dkt. 104, pp. 22-25 (now attempting to assert a previously undisclosed position that the "plain and ordinary meaning" of "program data" is all "the data the system receives, stores, and uses")). As another example, Guardian argues in its claim construction brief that the "applicant entry" is tied to background check that is actually performed (not a contemplated or potential check). (*See* Dkt. 104, pp. 12-15). But, in the prior Oklahoma action, Guardian via its client (The City of Oklahoma City) took the opposite position. (*See* Dkt. 107-7, pp. 8-10 ("a POSITA would have understood that 'applicant entry' may be created, and referred to as such, even when an organization fails to perform a background check")).

[14] For example, Guardian now refuses to even state what it believes is the "plain and ordinary meaning" of "electronic documents" in the context of the patents-in-suit. (*See* Dkt. 104, pp. 15-16). As yet another example, Guardian now takes the untenable position that the "questionnaires" in claim 4 do not have to be "electronic documents" – when that is expressly required by claim 1 (from which claim 4 depends). (*See* Dkt. 104, pp. 25-26). And, as a third example, Guardian attempts to read "inter-active" completely out of existence. (*See* Dkt. 104, pp. 26-27).

transmitting the applicant hyperlink for viewing the applicant set of electronic documents, the investigator is presented an option of changing one or more documents in the applicant set of electronic documents. Once again, this is more than mere automation of common pre-employment background investigations (or, at a very minimum, raises questions of fact). Dependent claim 3 also specifies a specific ordered combination of steps, which further distinguishes it from claim 1 of the '188 patent (where the Federal Circuit relied on what it believed to be the lack of any specific ordering of steps). *Miller Mendel*, 107 F.4th at 1354.

As a fourth non-limiting example, dependent claims 13 and 14 of the '098 patent recite computing devices that create a plurality of questionnaires each being a member of at least one class of a plurality of classes of questionnaire, each class being related to a type of reference, and including a first questionnaire of the plurality of questionnaires in the first reference set of electronic documents, the first questionnaire in one of the plurality of classes that is related to the type of the first reference. Yet again, this is more than mere automation of common pre-employment background investigations (or, at a very minimum, raises questions of fact). Guardian also never addresses the parties' disagreements about (among other things) the construction of several claim terms already mentioned, as well as the claim terms "class of questionnaire" and "type of reference."

**6. Guardian's Motion Does Not Avoid Full Claim Construction**

Guardian also attempts to persuade this Court to grant its motion by inaccurately arguing that this Court would thereby be relieved of having to perform a full claim construction. Guardian's position lacks merit for at least three reasons.

First, the Court cannot avoid resolving claim construction disputes by merely adopting the claim construction positions advocated by Defendants. Guardian has made no showing that the constructions advocated by Defendants are at least as favorable to patentability under 35 U.S.C. §101 as those advocated by Guardian (nor can Guardian attempt to make such an untimely showing for the first time in its Reply). *See*, *e.g.*, *Sanderling*, 65 F.4th at 704 (cited by Guardian) (the court need not engage in claim construction if the claims are directed to ineligible or eligible subject matter under all plausible constructions). Without this showing, Guardian is again

impermissibly attempting to have it both ways (*i.e.*, Guardian cannot advocate the use of Defendants' constructions for purposes of this motion and, if the motion is not granted, still retain the ability to later argue different constructions).[15]

Second, as revealed by the parties' respective claim constructions briefs, there are numerous substantive disputes as to the meaning of claim terms (in all claims) – many of which could impact any analysis under 35 U.S.C. §101 (although Defendants believe that the claims encompass patentable subject matter under either parties' constructions). For example, as mentioned above, the parties' proposed constructions for the last few limitations of the independent claims, as well as the terms "applicant entry" and "inter-active questionnaire" are different. The same is true for additional claim terms such as "program data" and "electronic documents." Moreover, in many instances, Guardian intentionally avoids ever explaining what it even contends is the "plain and ordinary meaning" of a particular claim term. [16]

Third, and perhaps most importantly, this is not a typical patent case. As detailed above, Defendants have never asserted infringement of the '098 patent or any of the remaining claims of

---

[15] In fact, as set forth in Defendants' claim construction brief, Guardian never even timely disclosed to Defendants what Guardian contends is the "plain and ordinary meaning" of each claim term – and Guardian's claim construction brief provides little additional detail. (Dkt. 106, pp. 7-8 (discussing Guardian's claim construction brief)). As such, Guardian is improperly seeking judgement on the pleadings under 35 U.S.C. §101 without ever fully disclosing its claim construction positions (*i.e.*, Guardian is intentionally obfuscating what it contends are plausible constructions).

[16] Instead of addressing these numerous substantive differences, Guardian creates an irrelevant "straw man" by arguing that Defendants' claim construction brief focuses on certain claim limitations that are not identical to those mentioned at the November 2025 hearing. Guardian ignores that the parties have, in the intervening eight months, conducted additional reviews of the intrinsic and extrinsic evidence. It also ignores that the Court set a page limitation for claim construction, and that the parties could not necessarily include every single claim term they might have wanted construed (especially when Guardian asserts multiple grounds for invalidity, beyond section 101).

Guardian's recitation of Defendants' proposed constructions (Motion, pp. 8-10) is also inaccurate in several respects, as Defendants later modified certain constructions (including because Guardian served revised invalidity contentions over three months late, just minutes before the parties exchanged constructions). Guardian could have easily reported the correct constructions – but it engaged in tactical gamesmanship (*i.e.*, it waited to file/serve the present motion until the day the parties exchanged claim constructions; and it could not wait even a single additional day so that it could address the parties' actual positions and construction disagreements).

the '188 patent. Nor have Defendants asserted infringement of any patent claims since claims 1, 5, and 15 of the '188 patent were invalidated by the Federal Circuit. As such, Guardian's declaratory judgment claims are irrelevant (and, in fact, this Court has no subject matter jurisdiction). Instead, this is a very unusual case where Guardian is seeking antitrust damages by asserting that the patents were obtained by fraud on the U.S. Patent and Trademark Office (*Walker Process*) and/or that Defendants filed sham litigation (*Handgards*) asserting patent claims they knew were invalid (despite the presumption that patent claims are valid). Thus, unless Guardian is alleging that Defendants' proposed constructions will govern those claims as well, or that it is dismissing its *Walker Process* claim and limiting its *Handgards* claim to 35 U.S.C. §101 (*i.e.*, dropping any claim based on 35 U.S.C. §§102, 103, 112), the Court will still very likely have to engage in a full claim construction – unless it grants Defendants' future Phase II motion for summary judgment.[17]

**D. <u>Guardian Contradicts Its Own Invalidity Contentions</u>**

Guardian's present motion also repeatedly contradicts its February 2, 2026 invalidity contentions. For example, those contentions assert that at least five different claim terms/phrases (and their purported counterparts in corresponding and/or similar claims) lack "enablement." In other words, that a PHOSITA would not understand how to make and use the claimed invention.[18] (Rylander ¶ 2 & Exh. A-Plaintiff's Invalidity Contentions, pgs. 20-22). However, Guardian now argues the exact opposite in the present motion; namely, that every claim embodiment was well understood, conventional, and routine to a PHOSITA at the time of invention. (Dkt. 105). These two positions cannot possibly be reconciled.[19]

---

[17] Because Defendants have made no claims for infringement against Guardian, there is no need to decide patent eligibility on less than a full record.

[18] "Enablement" is a core requirement of U.S. patent law under 35 U.S.C. §112(a). The patent specification must describe the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains… to make and use the same." *See Amgen Inc. v. Sanofi,* 598 U.S. 594, 610 (2023)

[19] Importantly, the U.S. Patent and Trademark Office has made the two inquiries expressly congruent: whether an element is "widely prevalent or in common use" – the test for well-understood, routine, and conventional activity – "is the same as the analysis under 35 U.S.C. 112(a) as to whether an element is so well-known that it need not be described in detail in the patent specification." MPEP §2106.05(d)(I)(2); *see also*, *Berkheimer Memorandum,* § II. (footnote continued)

As another example, Guardian's invalidity contentions assert that at least seven different claim terms/phrases are so indefinite that even a PHOSITA cannot reasonably determine what is claimed (let alone discern their "plain and ordinary" meanings).[20] (Rylander, Exh A-Plaintiff's Invalidity Contentions, pgs. 20, 22-23). Yet, in the present motion (and in its claim construction briefing), Guardian argues all claim terms should be given their "plain and ordinary meaning." (*See* Dkt 105, p. 14 ("GAT's position is that the claim terms of the Patents-in-Suit should be given their plain and ordinary meaning, and no construction is necessary")). Again, Guardian's positions cannot be reconciled.

**E. <u>Guardian Tactically Chose To Ignore Discovery</u>**

Finally, Guardian is seeking judgment on the pleadings after refusing to even respond to Defendants' interrogatory on this topic. Specifically, on March 30, 2026, Defendants served Guardian with Interrogatory No. 29 (authorized by Court Order, Dkt. 94). That interrogatory asked Guardian to describe in factual detail all support for its assertion that the claims-in-suit are invalid under 35 U.S.C. §101 – including the alleged abstract idea to which each claim is directed, a detailed description why each individual element/the ordered combination of elements in each claim were allegedly well-understood, routine, and conventional to a PHOSITA at the time of the invention, and a detailed description why claims 1, 5, and 9 of the '098 patent are allegedly invalid despite differences between those claims and claims 1, 5, and 15 of the '188 patent. (Rylander ¶ 3, Exh. B pages 9-10). Guardian never responded (nor did Guardian assert any objections). Months later, Guardian filed the present motion for judgment on the pleadings on the identical subject. Such complete disregard for the discovery process should not be rewarded. Moreover, because this Court has already ordered the discovery regarding *Alice*, Section 101, and claim construction,

---

Guardian's enablement contention is therefore an affirmative representation that these elements were *not* so well-known as to require no description — which is the very showing Guardian must now make and cannot. *See* § [G.3], *infra*.

[20] "Indefiniteness" is governed by 35 U.S.C. §112(b). The statute requires that the specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." *See, e.g., Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Guardian's refusal to provide any response (or any objections) arguably constitutes a violation of a court order. *See* Dkt 94 (January 27, 2026 Order authorizing additional discovery); *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans (Hano)*, 2017 WL 6388511 at *4 (E.D. La., Dec. 14, 2017) (court has authority to sanction a party for failure to obey an order that provides or permits discovery).

### F. <u>**Guardian Never Explains Its Position**</u>

Guardian also repeatedly fails to explain (let alone support) several of its incredibly broad pronouncements. For example, Guardian simply declares, by fiat, that the claims of the '098 patent (as well as the remaining claims of the '188 patent) are directed to an abstract idea under *Alice* step one and fail *Alice* step two because "none of the limitations add inventiveness to the abstract idea" – citing only page 496 and 498 of the district court opinion in the Anna, Texas case. *See* Motion, p. 2:6-10. However, Guardian again ignores (among other things): (1) that the Texas opinion was strictly limited to claims 1, 5, and 15 of the '188 patent; (2) the independent claims of the '098 patent contain several different claim limitations (and, according to Guardian's own claim construction brief, those limitations substantively narrow their scope); (3) the dependent claims add numerous, additional substantive limitations that the Texas district court never considered; and (4) Defendants are not limited in this case to the factual record that existed in Texas.[21]

As another example, Guardian simply declares, again by fiat, that the claims of the '098 patent (as well as the remaining claims of the '188 patent) "claim the well-known process of performing a background check" – citing only page 499 of the district court opinion in the Anna,

---

[21] The Federal Circuit opinion also misconstrued the '188 patent specification, which never describes "the invention" as automating certain tasks of a common pre-employment background investigation. *Miller Mendel*, 107 F.4th at 1354. The statement, apparently derived from Column 4, is limited to a specific disclosed embodiment. (*See* Col. 4 ("Referring now to FIG. 1, a software system…automates the majority of the tasks….")). Moreover, because each claim is its own <u>separate</u> invention, any statement cited by the Federal Circuit concerning "the invention" is necessarily limited to claims 1, 5, and 15 of the '188 patent. Even more importantly, Guardian takes the Federal Circuit's language out of context, as the question then before the appellate panel was whether there was evidence <u>in the record</u> that two limitations were well-understood, routine, and conventional in the industry. *Id*. The Federal Circuit was <u>never</u> asked (and thus never decided) whether any such statement would bar contrary evidence in a later case involving other patent claims.

Texas case. (*See* Motion, p. 7:23-24). However, Guardian once again ignores (among other things): (1) that the Texas opinion was strictly limited to claims 1, 5, and 15 of the '188 patent; (2) the independent claims of the '098 patent contain several different limitations (and, according to Guardian's own claim construction brief, those limitations narrow their scope); (3) the dependent claims also add numerous, substantive limitations that the Texas district court never considered; and (4) Defendants are not limited to the factual record that existed in Texas. Indeed, Guardian goes as far as to misquote the Texas district court opinion (substituting "the Patents-in-Suit" for "[t]he '188 Patent"), ignoring that the district court later clarified that its opinion was limited to claims 1, 5, and 15 of the '188 Patent (not the entire patent), and ignoring that this particular statement was never affirmed on appeal.

As a third example, Guardian simply declares, once again by fiat, that "all of the remaining claims are still invalid under §101 even using MMI's proposed constructions because they still fail *Alice* steps one and two" – this time, not even trying to cite any support. (*See* Motion, p. 11:20-21). Indeed, nowhere in Guardian's motion does it ever attempt to explain (let alone support) this broad, conclusory assertion. Moreover, as discussed above, because Guardian sought a tactical advantage by filing its motion on the same day the parties were set to exchange claim construction briefs, Guardian reproduces an outdated list of Defendants' proposed constructions.[22]

**G. <u>Even If The Court Reaches The Merits, Guardian Cannot Show The Remaining Claims Are Ineligible As A Matter Of Law</u>**

Even setting aside the absence of subject-matter jurisdiction (§ II.A) and Guardian's improper effort to override the factual allegations of the Amended Answer (§ II.B), the motion fails on the merits. On a Rule 12(c) motion the Court must accept MMI's well-pleaded allegations as true, construe the claims and the pleadings in the light most favorable to MMI, and may enter judgment only if Guardian shows—on the face of the pleadings and by clear and convincing evidence—that each challenged claim is ineligible as a matter of law. *Warn Indus., Inc. v. Agency*

[22] Guardian takes the same approach when it inaccurately asserts, without any cited support, that "the subject matter of the remaining claims has already been determined to be patent ineligible." *See* Motion, p. 14:2-3.

*6, Inc.*, 660 F. Supp. 3d 924, 931–32 (E.D. Cal. 2023) (Shubb, J.) (a §101 movant's burden is "high" given the patent's presumed validity; the court "construes patent claims in a manner most favorable to plaintiff" and "any factual disputes must be resolved by assuming the construction most favorable to plaintiff"). Guardian cannot carry that burden as to any of the remaining claims.

### 1. The *Alice* Two-Step Governing Standard

Patent eligibility follows the two-step *Alice/Mayo* framework set out above. At step one, the court asks whether the claim, read as a whole and in light of the specification, is "directed to" a patent-ineligible abstract idea, or instead to "a specific means or method that improves the relevant technology." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). If the claim is directed to a specific technological improvement, the inquiry ends. *Id.* If step one is reached, step two asks whether the claim elements, "individually and as an ordered combination," supply an inventive concept. *Alice*, 573 U.S. at 217. Critically, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). A §101 challenge may be resolved on the pleadings only when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

The threshold is a demanding one. An element or combination of elements is well-understood, routine, and conventional only where it can readily be concluded that the element is "widely prevalent or in common use in the relevant industry." USPTO Memorandum, *Changes in Examination Procedure Pertaining to Subject Matter Eligibility, Recent Subject Matter Eligibility Decision (Berkheimer v. HP, Inc.)* § II (Apr. 19, 2018) (the "Berkheimer Memorandum"); MPEP §2106.05(d)(I). Mere knowledge in the art does not meet it: "[t]he mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369. Indeed, claim features that were **anticipated** by a single prior art reference have been held not conventional, and therefore to reflect an improvement

to existing technology. MPEP §2106.05(d)(I)(1) (comparing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), with *Microsoft Corp. v. Enfish, LLC*, 662 F. App'x 981 (Fed. Cir. 2016)). Novelty and obviousness are questions "wholly apart" from eligibility. *Diamond v. Diehr*, 450 U.S. 175, 190 (1981). Defendants do not contend that the Patent Office's guidance binds this Court; it contends that the guidance says what *Berkheimer* says, and that Guardian's motion satisfies neither.[23]

**2. Step One – The Remaining Claims Are Directed to Specific Technological Operations, Not the Abstract Idea of "Performing a Background Check"**

Guardian's entire step-one theory rests on describing the claims at the highest possible level of generality—"performing a background check"—a characterization it lifts verbatim from the Texas court's assessment of three *different*, now-invalidated '188 claims and stretches across twenty-six claims that court never examined. The Federal Circuit has repeatedly condemned exactly this move: "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337; accord *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). The correct inquiry is claim-specific, and the remaining claims recite concrete technological operations, not a disembodied idea:

*The '098 independent claims (1, 5, 9).* Each requires "obtaining an applicant residential address from the applicant electronic response; generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator." That is a specific, rule-based geospatial operation—bounding a search by a distance threshold fixed in advance and measured from a dynamically supplied address—not the abstract idea of "checking references." It is a "rule[] with specific characteristics," eligible under *McRO, Inc. v. Bandai*

[23] The Court attributes *Skidmore* deference to the MPEP. When a district court evaluates an MPEP provision, they give it weight based on: (1) how carefully the USPTO considered the issue; (2) the validity of the reasoning; and (3) consistency with patent law.

*Namco Games Am. Inc.*, 837 F.3d 1299, 1313–16 (Fed. Cir. 2016), and a specific technique rather than a result, *see CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368–69 (Fed. Cir. 2020). The Federal Circuit never evaluated this limitation, which does not appear in the invalidated '188 claims.

*Reference-class-driven document routing.* The claims require "determining a reference class of the [first] reference based on the … program data" and then "selecting a [first] reference set of electronic documents based on the reference class." The classification is not a mental label; it governs which class-specific electronic documents the system selects and transmits—a rule whose output drives a concrete downstream operation. *McRO*, 837 F.3d at 1313–14.

*Cross-organizational retrieval (claims 2, 6, 10).* The claims require "searching for a previous applicant entry in the system memory associated with the applicant and a second organization different from the first organization." That is a specific query that federates otherwise-isolated, organization-specific records in a shared data store—the kind of unconventional operation on generic components that the Federal Circuit held eligible in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016).

*Adaptive and classified questionnaires (claims 4, 8, 12, 13).* The claims recite questionnaires whose questions are conditioned on prior responses, and a plurality of questionnaire classes each tied to a type of reference source, with the class-appropriate questionnaire selected for transmission. Those are specific rule-based architectures under *McRO*, not the abstract act of "asking questions."

Each of these is an "improvement[] in the way computers and networks carry out their basic functions"—the eligible side of the line drawn by Guardian's own authority. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (distinguishing *Enfish* and *BASCOM*). Because the '098 independent claims and the rule-based dependent claims are directed to specific technological improvements, the analysis can end at step one. *Enfish*, 822 F.3d at 1339.

(continued on next page)

### 3. Guardian Offers None of the Recognized Forms Of Support For A Finding That The Claimed Elements Were Well-Understood, Routine, And Conventional

A well-understood, routine, and conventional determination is a factual one, and it must be supported. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The Patent Office has required that a patent examiner may find an element or combination of elements well-understood, routine, and conventional *only* on the basis of one or more of four items: (1) an express statement in the specification, or by the applicant during prosecution, demonstrating the conventional nature of the element; (2) a court decision recognizing the element as conventional in the field; (3) a publication describing the state of the art and demonstrating that the element is widely prevalent or in common use; or (4) official notice, available only where the decisionmaker is certain of the point from personal expertise in the art. *Berkheimer Memorandum* § III(A); MPEP §2106.05(d)(I)(2). Guardian's motion offers none of the above.

**First, the Specification.** Guardian's only intrinsic evidence consists of passages describing the *hardware environment*: a "computing device," a "processor," "system memory" that "can be of any type." (Motion, pp. 18–19.) Those passages establish that the physical components were generic. Guardian provides nothing about whether the claimed operations — determining a reference class from applicant-supplied program data and selecting a class-specific document set on that basis; generating a list of law enforcement agencies and courts bounded by a pre-defined radius around an address obtained through the system; searching for a previous applicant entry associated with a second and different organization — were in common use. That distinction is in the holding of *Berkheimer*, which affirmed ineligibility as to claims 1–3 and 9, whose limitations did not capture the improvement the specification described, while reversing as to claims 4–7, which did. 881 F.3d at 1369–71. The Patent Office further adds a limit Guardian ignores: a conventionality finding "cannot be based only on the fact that the specification is silent with respect to describing such element." *Berkheimer Memorandum* § III(A)(1).

**Second, court decisions.** No court has examined the limitations at issue. The Federal Circuit addressed claims 1, 5, and 15 of the '188 patent and expressly disclaimed jurisdiction over

any others. *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345, 1354–56 (Fed. Cir. 2024). None of the twenty-six remaining claims was before it, nor was the ‘098 Patent before it. The radius-bounded generation limitation, the cross-organizational retrieval limitation, and the questionnaire-class limitations appear nowhere in the claims it reviewed.

**Third, publications.** Guardian cites none, and cannot cure the omission on reply, because the standard is demanding. The Patent Office instructs that “merely finding the additional element in a single patent or published application would not be sufficient,” and that a document may qualify as a printed publication under §102 and still “fail to establish that something it describes is well-understood, routine, conventional activity.” *Berkheimer Memorandum* § III(A)(3). A publication suffices only where its nature and its description of the element demonstrate that the element is “widely prevalent or in common use in the relevant field.” *Id.* Even use of a technique by a few practitioners “is not necessarily sufficient to make the use of the particular technique routine or conventional in the relevant field.” MPEP §2106.05(d)(I)(2).

**Fourth, official notice.** This is reserved for certainty drawn from expertise in the art, and the Patent Office directs that where an applicant challenges it, the examiner must come forward with one of the first three supports or a sworn declaration setting out specific factual statements. *Berkheimer Memorandum* § III(B). Guardian has submitted no declaration from anyone, let alone from a person of ordinary skill in the relevant field. Miller Mendel has come forward with the sworn opinion of a qualified technical expert that these operations were not well-understood, routine, or conventional as of April 6, 2011. Guardian has not controverted it — and, having refused to answer the Court-authorized interrogatory directed to this precise question, Guardian is in no position to complain of the record it created. (*See* § [E], *supra*.)

What is left is attorney argument that computers, email, web forms, and digital maps existed in 2011. That, however, is irrelevant. “Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art.” *Berkheimer*, 881 F.3d at 1369. As noted above, the actual inquiry is whether the element is “widely prevalent or in common use **in the relevant industry**.” USPTO Memorandum, *Changes in Examination Procedure Pertaining to Subject Matter Eligibility, Recent Subject Matter Eligibility Decision*

*(Berkheimer v. HP, Inc.)* § II (Apr. 19, 2018) (the "Berkheimer Memorandum"); MPEP §2106.05(d)(I). Guardian has not attempted the showing the law requires, and it cannot make that showing for the first time on reply.

**4. Key Limitations Of Claims In The '098 Patent And '188 Patent Were Not Widely Prevalent Or In Common Use In The Background Investigation Industry**

The record reveals that key limitations of claims in the '098 Patent and '188 Patent were not widely prevalent or in common use in the background investigation industry. The Amended Answer (Dkt 86, ¶¶ 149, 154) and the Declarations of Tyler Miller (Dkt 69-2) and David Howell (Dkts. 69-1, 108) explain that key limitations of both patents were not well-understood, routine, and conventional in the background investigation industry in April 6, 2011.

Expert Howell, in the concurrently submitted declaration, further describes his investigation and research into the practices of the background investigation industry and 2011 and concludes that the described limitations of the '098 and '188 Patents were not widely prevalent and commonly used in the industry, i.e., were not well-understood, routine, and conventional. (Howell Decla., dated September 3, 2026, ¶¶ 30, 37, 39, 42, 45, 49). He researched the competitors and known technology. He focused his question not on whether something was feasible to be done if anyone had the idea to do it, but whether key limitations themselves were widely used and common in background investigation in 2011. No competitor described automatically generating reference lists based on a current or prior applicant address with a bounded parameter such as a radius. No competitor or otherwise background investigation company described or promoted a product that electronically checked for prior applications within a database to associate with a current applicant and present the prior applications of the applicant to the investigator.

Moreover, Guardian filed an *inter partes* petition to the USPTO Patent Trial & Appeal Board, contending that the Background Solutions product invalidated claims of the '188 Patent. The PTAB rejected that petition, however, ruling that Guardian failed to prove that product had the critical limitations which pre-dated April 6, 2011. This is further evidence that the limitations

at issue were not widely prevalent and commonly used.

So too, in this case, the so-called "smoking gun" emails, one in 2012 and one in 2014, Guardian attached to its complaint, and upon which it places so much weight, instead cut directly against Guardian's position. (Dkts. 51-4, 51-5). Neither email describes generating a suggested list of references based on a radius from the applicant's residence, nor does it mention hyperlinks. Neither email suggests a system which associates prior applications to a current applicant for presentation to an investigator. Neither references reference classes or interactive questionnaires. Neither mentions any date prior to 2012 and 2014 respectively. This creates the strong inference they were not routine and conventional in that industry on or prior to April 2011.

**5. Step Two – At a Minimum, the Ordered Combination Supplies an Inventive Concept, and Conventionality Is a Disputed Fact That Cannot Be Resolved On the Pleadings**

Even if any remaining claims Claim were deemed directed to an abstract idea, judgment on the pleadings would remain improper for two independent reasons.

**First, the inventive-concept question turns on a disputed fact that must be resolved for MMI.** Whether the claimed combination was well-understood, routine, and conventional is a question of fact. *Berkheimer*, 881 F.3d at 1368. MMI's Amended Answer alleges, specifically and as an ordered combination, that the claimed methods "improve the functioning of computer-implemented processes" and reflect "an inventive concept that was not well-understood, routine, and conventional to those skilled in the art at the time of the invention." (Dkt. 86 ¶¶ 149, 154). This Court has already applied that analysis to these very allegations. In granting MMI leave to add them, the Court—citing *Aatrix*—recognized that "[w]hether the claim elements or the claimed combination are well-understood, routine, and conventional is a question of fact … [that] cannot be answered adversely to the patentee" on an undeveloped record, and found that MMI's allegations, "if accepted as true," could plausibly "establish that the claimed combination contains inventive components and improves the workings of the computer." (Dkt. 77 at 3–4 (quoting *Aatrix*, 882 F.3d at 1125, 1128)). The Court further observed that "allowing factual development … is particularly pertinent in patent cases, which can involve highly specialized and technical

factual questions," and that "the better preferred procedure is to allow amendment and permit the defendant to challenge the pleadings with a motion to dismiss." *Id.* Guardian now brings that challenge—on the same allegations and the same undeveloped record the Court already reviewed—but nothing has changed that would permit the Court to answer the conventionality question adversely to MMI as a matter of law. On a Rule 12(c) motion those allegations must be accepted as true, which forecloses judgment. *Aatrix*, 882 F.3d at 1126–28; *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–18 (Fed. Cir. 2019) (vacating §101 dismissal where the district court erred "by ignoring allegations that, when properly accepted as true, preclude the grant of a motion to dismiss"). Guardian's own authority is directly on point: in *Samsung Electronics Co. v. Blaze Mobile, Inc.*, 673 F. Supp. 3d 1066, 1082 (N.D. Cal. 2023), the court *denied* a Rule 12(c) motion because the patentee "provided plausible and specific factual allegations that aspects of the claims are inventive … sufficient to defeat a motion for judgment on the pleadings."

MMI's inventive-concept allegations are anchored in the specifications' concrete description of the claimed architecture, not in bare conclusions. The '098 and '188 specifications describe an "Address Locator" that generates contact information for law-enforcement agencies within a "pre-defined radius around the applicant['s]" residence, (see '098 Patent, col. 9:48–57); an interactive questionnaire whose questions are selected "based on the applicant's response," eliminating questions rendered unnecessary by prior answers, (*id.*, col. 5:60–67); and a classification architecture that "determin[es] a reference class" and "select[s] a … reference set of electronic documents based on the reference class," assembling documents "related to that class of reference," (*id.*, col. 2:47–48, col. 15:26–32). These are the kind of concrete, specification-anchored allegations of unconventionality that *Aatrix* held preclude dismissal at the pleadings stage. *Aatrix*, 882 F.3d at 1126–28.

**Second, the ordered combination is inventive on its face.** An inventive concept can be found "in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Even claims employing generic components are eligible where the claim "requires that these generic components operate in an unconventional manner to achieve an improvement in

computer functionality." *Amdocs*, 841 F.3d at 1300–01. The remaining claims recite precisely such an arrangement—receiving and classifying applicant-supplied data, determining a reference class, dynamically assembling and transmitting class-specific electronic documents, and generating a radius-bounded list of law-enforcement agencies and courts from an address obtained through the system—a combination that, as of the April 6, 2011 priority date, was not well-understood, routine, or conventional.

That principle does not depend on any individual element being unconventional. "[A] new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Diehr*, 450 U.S. at 188. The Patent Office states the rule in the same terms: "[e]ven if one or more additional elements are well-understood, routine, conventional activity when considered individually, the combination of additional elements may amount to an inventive concept." MPEP §2106.05(d)(I)(3). So in *BASCOM*, though every additional element was a generic network or Internet component, the claims survived "because of the non-conventional and non-generic arrangement." *Id.* And in *CellzDirect*, individually well-known steps performed "contrary to what was taught in the art" were held neither routine nor conventional. *Id.* (discussing *Rapid Litig. Mgmt. v. CellzDirect, Inc.*, 827 F.3d 1042, 1051 (Fed. Cir. 2016)). Guardian never analyzes the ordered combination at all; it disaggregates the claims into "receiving, storing, transmitting, determining, selecting, and generating," relabels the residue "background checking," and stops.

Guardian's contrary authorities do not carry its clear-and-convincing burden on the pleadings:

*SAP*'s statement that generic computers performing "already available basic functions" cannot supply an inventive concept, 898 F.3d at 1169–70, addressed a claim whose "advance lie[d] entirely in the realm of abstract ideas"—financial mathematics. *Id.* at 1163. The same opinion preserves eligibility for claims that recite a specific means of achieving a result rather than the result itself, *id.* at 1167–68, which these do.

Guardian's refrain that "a claim for a new abstract idea is still an abstract idea," *id.* at 1163, misses the point: MMI does not rely on novelty, but on a specific, non-conventional application.

The Federal Circuit's observations that the '188 specification describes "already available computers" and that the illustrative process steps "may be performed in any random order" (*Miller Mendel*, 107 F.4th at 1354) were directed to the generic components of invalidated claim 1, on a record that did not contain MMI's factual allegations. That "any random order" statement, moreover, describes a single disclosed embodiment ("process 800"), not "the invention," and cannot bar contrary evidence directed to different claims.

*SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 257 (E.D. Pa. 2016)—a nonbinding district-court decision—concerned anonymous reference-surveying and none of the radius, classification, or cross-organizational limitations at issue here.

*Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353, 1356 (Fed. Cir. 2016), and *Electronic Communication Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1180 (Fed. Cir. 2020), condemned claims reciting only the "gathering, analyzing, and displaying" of information; the remaining claims recite specific geospatial, classification, and cross-tenant operations that go well beyond passive information handling.

More fundamentally, the catalog of conventional computer functions Guardian invokes carries a limitation Guardian omits. Those functions — receiving or transmitting data over a network, electronic recordkeeping, storing and retrieving information in memory — are recognized as well-understood, routine, and conventional "when they are claimed in a merely generic manner (e.g., at a high level of generality) or as insignificant extra-solution activity." MPEP §2106.05(d)(II). The remaining claims are not claimed at that level. They do not recite "transmitting data"; they recite transmitting a reference hyperlink to a reference email address, where the reference was identified by the applicant's own electronic response, where the system determined that reference's class from applicant-supplied program data, and where that class determined which set of electronic documents the reference receives. ('098 patent, col. 16, ll. 1–17; '188 Patent, *id.*). They do not recite "generating information"; they recite obtaining a residential address from the applicant electronic response and generating a suggested reference list of law enforcement agencies and courts within a pre-defined radius of that address. (*Id.*, col. 16, ll. 22–27). The same MPEP section supplies the controlling contrast: the *DDR Holdings* claims were

eligible because they specified "how interactions with the Internet are manipulated to yield a desired result — a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." MPEP §2106.05(d)(II)(i) (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014)). These claims specify how, not merely what.

Guardian cannot resolve that disputed fact against MMI on a motion confined to the pleadings—and its own motion does not stay within them. Guardian relies on matters outside the pleadings: the certified transcript of the November 24, 2025 hearing (Mot., Ex. 6), the Texas court's and Federal Circuit's factual characterizations of the claims and specification as reciting "already available computers" performing "already available basic functions" (Mot., Exs. 3–5), and its own attorney-prepared claim-comparison charts (Mot., Exs. 7–12). Guardian thus asks the Court to decide the conventionality question on an extrinsic record of its own choosing while denying MMI the same opportunity. To the extent the Court looks to Guardian's extrinsic materials, the Motion must be treated as one for summary judgment, Fed. R. Civ. P. 12(d), and MMI is entitled under Rule 56(d) to discovery before any such adjudication—there has been no §101 discovery and no claim construction in this action. The accompanying Declaration of David Howell confirms that the conventionality of the claimed combination as of April 6, 2011 is, at a minimum, genuinely disputed. Either way—denial on the pleadings under *Aatrix*, or conversion under *Berkheimer* and Rule 56—Guardian is not entitled to judgment.

**6. The Dependent Claims Independently Require Denial**

Guardian treats one invalidated claim as representative of all twenty-six remaining claims and asserts, without analysis, that the dependent claims "add the same basic limitations." As shown above and in §II.C.(5) & II.G.(6), the dependent claims add materially different limitations that the Texas court never considered, and Guardian bears the burden of proving each ineligible—a burden it cannot meet on the pleadings, claim by claim. The cross-organizational-lookup claims (2, 6, 10) recite a specific cross-tenant data operation (*Amdocs*); the classified-questionnaire claim (13) recites a specific classification-and-selection architecture (*McRO*); the adaptive-questionnaire claims (4, 8, 12) recite response-conditioned rules (*McRO*); and the investigator-review claims (3,

7, 11) add a specific pre-transmission step in a defined operational sequence. Guardian's dependent-claim authorities are inapposite: *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014), and *Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 641–43 (D. Del. 2018), invalidated claims that narrowed only to "familiar" categories or recited "functional results" without any claimed "how." The remaining dependent claims recite the specific technological "how" those cases found missing.

## III. CONCLUSION

For the reasons stated above and those that may be presented at oral argument, Guardian's Renewed Motion for Judgment on the Pleadings should be denied in its entirety.

Dated: September 3, 2026

Respectfully submitted,

RYLANDER & ASSOCIATES PC
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: *__/s/ Kurt M. Rylander__*

Attorneys for Defendants,
MILLER MENDEL, INC. and TYLER MILLER